UNITED STATES, Appellee,

v.

Edward E. SIMMONS, Sergeant
U.S. Army, Appellant.

No. 67,618.
CMR No. 9002290.

U.S. Court of Military Appeals.

Argued March 2, 1993.

Decided Sept. 30, 1993.

For Appellant: *Captain Teresa L. Norris* (argued); *Colonel Malcolm H. Squires, Jr.* and *Major Fran W. Walterhouse* (on brief); *Lieutenant Colonel James H. Weise, Captain Michael P. Moran, Captain Timothy M. Lawlor.*

For Appellee: *Lieutenant Colonel Joseph A. Russelburg* (argued); *Colonel Dayton M. Cramer, Major Donna L. Barlett, Captain Samuel J. Smith, Jr.* (on brief); *Lieutenant Colonel Daniel J. Dell'Orto* and *Major Edith M. Rob.*

### Opinion of the Court

SULLIVAN, Chief Judge:

On August 20 and 21, 1990, appellant was tried by a general court-martial composed of officer members at Fort Bliss, Texas. Contrary to his pleas, he was found guilty of four specifications of failure to obey a lawful order of a superior commissioned officer by having "non-professional" relationships with four different trainees. Art. 92, Uniform Code of Military Justice, 10 USC § 892. He was also found guilty of raping one of these trainees and indecently assaulting another, and false swearing, in violation of Articles 120 and 134, UCMJ, 10 USC §§ 920 and 934, respectively. He was sentenced to a dishonorable discharge, confinement and forfeiture of $700.00 pay per month for 10 years, and reduction to Private E1. The convening authority reduced the confinement to 6 years and the forfeitures to $500.00 pay per month for 6 years, but otherwise approved the sentence. On November 19, 1991, the Court of Military Review affirmed the findings and the sentence, except for modifying the forfeiture to $500 pay per month for 72 months. 33 MJ 883.

This Court granted review of the following issue:

> WHETHER THE GOVERNMENT FAILED TO DISCLOSE TO APPELLANT THE EXISTENCE OF FAVORABLE AND MATERIAL IMPEACHMENT EVIDENCE (ALLEGED VICTIM'S STATEMENT TO POLYGRAPHER THAT SHE DID NOT BELIEVE SHE HAD BEEN RAPED BY APPELLANT BECAUSE SHE ENJOYED THE SEXUAL INTERCOURSE) PURSUANT TO *BRADY v. MARYLAND,* 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963), IN DIRECT VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS.

We hold that legal error occurred when trial counsel failed to discover and disclose evidence of contradictory statements of the rape prosecutrix made to a government polygrapher prior to trial. RCM 701(a)(2) and (6), Manual for Courts–Martial, United States, 1984; *cf. United States v. Brooks,* 966 F.2d 1500, 1502–04 (D.C.Cir.1992). We also hold that such error substantially prejudiced appellant so as to require a rehearing on the charge of rape. *See United States v. Trimper,* 28 MJ 460 (CMA), *cert. denied,* 493 U.S. 965, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989); *cf. United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

The Court of Military Review summarized the facts giving rise to this appeal. It said:

> This case arose from sexual advances by a drill sergeant toward trainees.... Two female trainees, Privates B and E, testified that they went to appellant's apartment. While the trainees were drunk and "passed out," appellant and his friend had sex with them without their consent. Appellant and his friend testified at trial and admitted the trainees were at the apartment but denied having sex with them. The court found appellant guilty of rape of Private (PVT) B and indecent assault of PVT E. Before trial, defense counsel made a request for "any and all information in the government's possession or in the possession of government agents, informants, or police officials that may be favorable to the defense within the meaning of *Brady v. Maryland.*" This request was one item in the general request commonly submitted by members of the Trial Defense Service pro forma. Trial counsel's response to the request

was, "no known information." Trial counsel offered to make available for review and inspection all information he had in his custody or control. No issue concerning this matter was raised at trial.

Privates B and E had been administered polygraphs prior to the Article 32 [UCMJ, 10 USC § 832] investigation. The results were unfavorable to them. In a later statement to the polygrapher, PVT B had said that she did not feel she was a victim of rape as she enjoyed sex with appellant and she felt she could have done something to prevent their actions "if she would have wanted to." At the Article 32 investigation, Privates B and E admitted that their polygraphs show deception. Trial defense counsel conceded that trial counsel did not know of the subsequent statement until after trial. Subsequent to trial, however, in submissions pursuant to Manual for Court–Martial, United States, 1984, Rule for Courts–Martial 1105 [hereinafter RCM], trial defense counsel raised this issue.

33 MJ at 884–85 (footnotes omitted).

The report in question, prepared on March 14, 1990, by an examiner from the Fort Bliss District, 6th Region, USACIDC (U.S. Army Criminal Investigation Command), stated:

During the pre-test phase conducted on 14 Mar 90, [B] made no comments or statements contrary to those already provided.

Based on the results of a polygraph examination conducted on 14 Mar 90, it was concluded that [B] was not being truthful when answering the following relevant questions:

Q. Did you lie when you said you did not give those men permission to engage in sexual intercourse with you?

A. No.

Q. Did you lie when you said you did not give those men permission to engage in sexual intercourse with you in that apartment?

A. No.

Q. Are you lying when you say you did not remove any of your clothing while at that apartment?

A. No.

During the post-test phase conducted on 14 Mar 90, [B] stated that while undergoing the polygraph examination, she had also been thinking of the one time she had engaged in sexual intercourse with her AIT instructor, SFC [M], while stationed here at Ft Bliss, TX. She stated she had not taken any action(s) against SIMMONS or [W], while they were engaged with sexual intercourse with her and felt that she could have done something to prevent their actions, if she would have wanted to. She related she had not originally wanted to report these incidents, but had done so, only because she wanted to protect her friend [E]. She related that she does not feel she is a victim of rape, as she enjoyed the sexual intercourse with SIMMONS, but was not aware of the sexual intercourse with [W], due to her being asleep at the time.

In his RCM 1105 submission dated October 12, 1990, defense counsel requested that the findings of guilty be set aside by the convening authority. Counsel said:

2. REASONS FOR REQUEST: The prosecution did not disclose two important matters before trial, when they should have disclosed the matters: first, that both Private [E] and Private [B] took a polygraph examination and both indicated deception when questioned about the "relevant areas," meaning the rape. Second, the prosecution did not disclose the fact that at one point Private [B] indicated to the CID agent (Special Agent Gonzalez) that she did not think she was raped by SGT Simmons because she enjoyed it (meaning sexual contact with SGT Simmons). SA Gonzalez can verify this information for you. Third, during the trial, there was *no evidence* introduced regarding whether either PVT [E] or PVT [B] were married to SGT Simmons at the time of the offenses, and this is a *crucial element* of the charge of rape.

3. OTHER RELEVANT FACTS: At the Article 32 investigation in this case, PVT [E] and PVT [B] admitted that they flunked polygraph examinations which were conducted by the local CID office. On 25 July 1990, this counsel served on the prosecution a request for any and all information in the government's possession *or in the possession of government agents, informants, or police officials* that may be favorable to the defense (Enclosure 1). The trial counsel responded to my request on 8 August 1990; he stated that there was no known information which was favorable to the defense (Enclosure 2), although he knew by that time that both females had flunked the polygraphs. On 10 October 1990, I discussed the matter with the trial counsel; he stated that, as of the time of trial, he knew that both females had flunked their polygraph examinations but did not know of the statement by PVT [B] to SA Gonzalez.

(Enclosures omitted.)

In a post-trial affidavit dated June 12, 1991, he further stated:

I, Captain John H. Finger, Jr., WANT TO MAKE THE FOLLOWING STATEMENT UNDER OATH:

I was the trial defense counsel for SGT Edward E. Simmons. Regarding the matters—surrounding the appeal of this case, it is necessary for me to state what I knew prior to trial and what I knew afterward. At the Article 32(b) investigation in this case, both PVT [E] and PVT [B] stated that they had failed polygraph examinations. Due to other pressing matters at both Fort Bliss and Fort Huachuca and the fact that polygraph examinations are inadmissible at court, I did not examine the CID case file or talk to the CID Agent who conducted the polygraph. However, as stated in my matters submitted under RCM 1105, I did submit an all-inclusive request for discovery on the trial counsel on 25 July 1990, well before we went to trial. The trial counsel's response to the pertinent question was that there was no known information favorable to the defense, al-

though he knew about the polygraph examinations. On approximately 9 October 1990, almost 1½ months subsequent to trial, I talked to the polygrapher, SA Gonzalez (who is now Retired) about an unrelated case. He indicated that he conducted a post-polygraph interview with both [E] and [B]. As I remember our conversation, SA Gonzalez said [E] stuck to her story that she had been raped, but [B] said she did not think she was raped by SGT Simmons because she enjoyed the sexual contact with him. Now aware of this fact, I requested a new trial as can be seen in my matters under RCM 1105. In fairness to the trial counsel, I have known him since my arrival at Fort Bliss and have always considered him to be ethical. I honestly believe he himself knew nothing about [B's] post-trial interview, or he would have told me. I will be on terminal leave starting 14 June 1991. If there are further questions about this matter, please leave a message for me at: [address omitted].

Finally, appellate defense counsel makes the following uncontradicted representation in his Supplement to the Petition for Grant of Review:

Appellate defense counsel note that, in a companion case, *United States v. Williams*, ACMR 9002467, the Government stipulated as a matter of fact that Private [B] told SA Gonzales that she did not believe she had been raped by appellant because she enjoyed engaging in sexual intercourse with appellant, and that she was not aware of the sexual intercourse with Sergeant Williams. *See* "Stipulation of Fact" (Appendix B). Appellate defense counsel further note that appellant's co-accused was acquitted of the allegation of raping PVI [B]. *See* General Court–Martial Order 7, *United States v. Williams*, ACMR 9002467 (Appendix C).

Supplement at 7 n.2 (Appendices omitted).

– – –

Our starting point in resolving this appeal is recognition, once again, of the "gen-

erous" pretrial discovery provided in the military justice system. Then–Chief Judge Everett commented on these legal provisions and the reasons for them in *United States v. Eshalomi*, 23 MJ 12, 24 (CMA 1986), as follows.

Although *Bagley* may prescribe the minimal constitutional requirements of disclosure, it does not prevent Congress or the President from prescribing higher standards for courts-martial. As we read Article 46 of the Uniform Code, 10 USC § 846–which was enacted when discovery for defendants was almost nonexistent in state and federal criminal *trials—Congress intended more generous discovery to be available for military accused.* Indeed, as we interpret this article, defense counsel have been denied "equal opportunity to obtain witnesses and other evidence" if a trial counsel unilaterally and without court approval denies a defense request for statements or records in his possession.

Article 46 contemplates that the President would promulgate regulations providing the defense with the required "equal opportunity." *Consistent with this mandate, see also* Art. 36, UCMJ, 10 USC § 836, *the President has made generous provision for discovery by the accused in trials by court-martial.* This was true under the Manual for Courts–Martial (1969), which applied to appellant's trial. *See* paras 34, 44*h,* and 115*c,* Manual for Courts–Martial, United States, 1969 (Revised edition). *It is even truer today. See RCM 701(a)(1)(C), Manual for Courts–Martial, United States, 1984.* One justification for the liberal military discovery practice is:

Providing broad discovery at an early stage reduces pretrial motions practice and surprise and delay at trial. It leads to better informed judgments about the merits of the case and encourages early decisions concerning withdrawal of charges, motions, pleas, and composition of court-martial. - In short, experience has shown that broad discovery contributes substantially to the truthfinding process and to the efficiency with which it functions. It is essential to the administration of military justice; because assembling the military judge, counsel, members, accused, and witnesses is frequently costly and time consuming, clarification or resolution of matters before trial is essential.

App. 21, Analysis to RCM 701.

(Footnotes omitted; emphasis added.)

■ With this broad mandate in mind, we now turn to the granted issue which asks if trial counsel had a duty to discover and disclose evidence of contradictory statements made by the alleged rape victim to a CID polygrapher and recorded in his official report. The parties have all addressed this case in constitutional terms with particular concern for the decision of the Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We note, however, that prior to trial appellant also based his discovery request on the "Rules for Courts–Martial, Manual for Courts–Martial, 1984." Our examination of these generous rules of military discovery establish reversible error on this basis alone. *See generally Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–84, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). *But see United States v. Brooks,* 966 F.2d at 1502–03 (four circuits (3d, 5th, 7th, 11th) which have considered question hold that prosecutor under *Brady* has duty to search readily identifiable police files for requested exculpatory information). *See also Jacobs v. Singletary,* 952 F.2d 1282, 1287–89 (11th Cir.1992).

RCM 701(a)(2) states, *inter alia:*

*Disclosure by the trial counsel.* Except as otherwise provided in subsections (f) and (g)(2) of this rule, the trial counsel shall provide the following information or matters to the defense—

\*    \*    \*

(2) *Documents, tangible objects, reports.* After service of charges, *upon*

*request of the defense, the Government shall permit the defense to inspect:*

\* \* \*

(B) *Any results or reports of physical or mental examinations, and of scientific tests or experiments or copies thereof, which are within the possession, custody, or control of military authorities, the existence of which is known, or by the exercise of due diligence may become known, to the trial counsel, and which are material to the preparation of the defense* or are intended for use by the trial counsel as evidence in the prosecution case-in-chief at trial.

(Emphasis added.)

■ This rule makes one point crystal clear. When results or reports of military scientific tests or experiments are requested by the defense,[1] such a request cannot be satisfied by making available for inspection only those reports *within the possession, custody, or control of trial counsel.*[2] *See also United States v. Brooks, supra. Cf.* RCM 701(a)(1)(C) (in "possession" of trial counsel). Trial counsel must exercise due diligence in discovering such reports not only in his possession but also in the possession, control, or custody of other "military authorities" and make them available for inspection. Thus trial counsel in this case had a duty to seek out and examine the polygraph-report evidence in the possession of military investigative authorities which was favorable to the defense. *See also United States v. Rodriguez Alva-*

rado, 985 F.2d 15, 19 (1st Cir.1993); *Carter v. Rafferty,* 826 F.2d 1299, 1305 (3d Cir. 1987).

■ Admittedly, RCM 701(a)(6) provides that trial counsel has a duty to disclose "known" evidence of the alleged victim's post-polygraph statements which favored appellant. That rule states:

(6) *Evidence favorable to the defense.* The trial counsel shall, as soon as practicable, disclose to the defense *the existence of evidence known to the trial counsel* which reasonably tends to:

(A) Negate the guilt of the accused of an offense charged;

(B) Reduce the degree of guilt of the accused of an offense charged; or

(C) Reduce the punishment.

(Emphasis added.) However, in view of trial counsel's particular duty to discover scientific reports imposed by RCM 701(a)(2)(B); the intent of the Manual drafters to codify *Brady v. Maryland, supra* (*see* Drafters' Analysis to RCM 701, 1984 Manual, *supra* at A21–30), and the broad mandate of military discovery rules, we hold this evidence was "known" within the meaning of this rule. *See generally United States v. Eshalomi, supra;* and *United States v. Brooks,* 966 F.2d at 1502–03.

Of course, defense counsel in his post-trial affidavit admitted that he, too, was aware of the existence of a favorable polygraph test but ignorant of the contradictory statements of the prosecutrix contained in the polygrapher's report. Furthermore,

---

1. Defense counsel requested:

    4. *All reports of CID, MP or other law enforcement investigators who spoke to witnesses or otherwise participated in the investigation of this case, whether such reports or statements are included in any formal report or not.* This request specifically includes any photographs, slides, diagrams, sketches, drawings, electronic recordings, handwritten notes, or any other documentation made by such investigators pertaining to this case.

    5. *Copies of all laboratory tests, field tests, and reports* thereof, to include relevant chain of custody documents from the time of seizure to the present, including any attempts to obtain fingerprints, regardless of the degree of success of such attempts.

(Emphasis added.)

2. Trial counsel responded:

    4. *An opportunity will be made to review or reproduce discoverable investigative reports within the possession, custody or control of Trial Counsel.* All of the aforestated information has previously been served on the defense in the preferral packet.

    5. An opportunity will be made to review or reproduce any discoverable laboratory test results, field test results, reports thereto, and chain of custody documents. *See also* 4 above.

· (Emphasis added.)

he implied that he may have had access to that report although, as indicated in his earlier addendum to his post-trial RCM 1105 submission, such access was largely dependent on the approval of trial counsel. Thus, a question is raised whether, under *Brady v. Maryland, supra,* there is any duty on the prosecutor's part to disclose evidence which could be discovered by a reasonably diligent defense counsel. *See United States v. Wilson,* 901 F.2d 378 (4th Cir.1990); *United States v. Hicks,* 848 F.2d 1 (1st Cir.1988); *Jarrell v. Balkcom,* 735 F.2d 1242 (11th Cir.1984); *United States v. LeRoy,* 687 F.2d 610, 618–19 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983); *Gollaher v. United States,* 419 F.2d 520 (9th Cir.), *cert. denied,* 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969).[3]

We need not decide whether the evidence in this case could have been discovered by a reasonably diligent defense counsel. RCM 701(a)(2) places an affirmative duty on *trial counsel to make available to the defense* any government documents or reports material to the preparation of the defense which "may become known" to trial counsel "by the exercise of due diligence." That simply was not done here.[4]

■ Our final concern is whether appellant was prejudiced by trial counsel's failure to discover and disclose to the defense evidence of Private B's post-polygraph statements. *See generally United States v. Bagley, supra.* The Government asserts that her pretrial statements were not inconsistent with her trial testimony but merely reflected her ignorance of the law or an explanation for the finding of deception on her polygraph. It also argues that use of her statements "would have been inconsistent with the defense trial strategy that no intercourse occurred and may have undermined or altered the defense strategy re-

garding charges dealing with the prohibited relationship with trainees." Final Brief at 8. We disagree.

The witness' statements addressed both her failure of the polygraph test and her earlier conduct with appellant. In apparent explanation of her test failure, she stated that during the test, she also thought about sexual intercourse she had had with another instructor at Fort Bliss. However, she then noted her failure to resist appellant which she further acknowledged "she could have done ... if she would have wanted to." She also noted that she did not want to report this incident but she had done so to protect her friend. Finally, she stated that she did not feel that she was a victim of rape as she enjoyed the sexual intercourse with him. In view of her fellow trainee's inconclusive testimony, such evidence would have devastated the prosecution's theory that resistance by the alleged victim was impossible in her drunken and partially conscious state. *See McDowell v. Dixon,* 858 F.2d 945 (4th Cir.1988); *cf. United States v. Risken,* 788 F.2d 1361, 1375 (8th Cir.1986).

Moreover, the undisclosed evidence would not have undermined the defense's strategy at this court-martial. Admittedly, the defense argued that the sexual intercourse charged as rape did not occur and such a fact, if proved, might also constitute a defense to the charge of having an unprofessional sexual relationship with a recruit. However, the members were not required to believe the portion of her post-polygraph statement where she asserted that sexual intercourse occurred. *See United States v. Williams,* 21 MJ 360, 362 (CMA 1986). In fact, the members could have found that her post-polygraph statements were so bizarre that they also destroyed her credibility on this part of her statement as well. *See Carter v. Rafferty,* 826 F.2d at 1308. *See generally United States v. Robbins,* 16

---

3. We also note that defense counsel's stated reasons for not more aggressively pursuing the favorable polygraph report raise substantial questions concerning effective assistance of counsel. *See United States v. Scott,* 24 MJ 186 (CMA 1987).

4. We are not requiring trial counsel to search for the proverbial needle in a haystack. He need only exercise due diligence in searching his own files and those police files readily available to him.

USCMA 474, 37 CMR 94 (1966). Finally, alternative defenses are not prohibited at courts-martial, and appellant should not have been misled by the prosecution from pursuing them. *See United States v. Bagley*, 473 U.S. at 682–83, 105 S.Ct. at 3383–84 (Opinion of Blackmun, J.).[5]

The decision of the United States Army Court of Military Review is reversed as to specification 1 of Charge III and the sentence. The finding of guilty thereon and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing on that specification and the sentence, or a rehearing on sentence only may be ordered.

Judge WISS concurs.

GIERKE, Judge (concurring):

I agree with the holding in the principal opinion that trial counsel failed to discover and disclose exculpatory information which was either known to him or would have become known "by the exercise of due diligence." RCM 701(a)(2)(B), Manual for Courts–Martial, United States, 1984. While I agree with Judge Crawford (*infra*) that trial counsel did not violate *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because the exculpatory evidence could have been discovered by a reasonably diligent defense counsel, I read RCM 701 as being broader than *Brady*. Thus, I would hold that trial counsel had a duty under RCM 701 to discover and disclose the prosecutrix's exculpatory statement even if defense counsel failed to exercise due diligence.

I do not believe that the Chief Judge's interpretation of RCM 701 is unduly burdensome on trial counsel. We are requiring only that trial counsel exercise "due diligence" to discover and disclose exculpatory evidence in counsel's own files and those police files which are readily avail-able. In appellant's case counsel for both sides knew that the prosecutrix had failed a polygraph, but neither counsel took the obvious step of examining the results of the post-polygraph interview.

I do not share Judge Cox's concern (*infra*) for the difficulty of determining what is "exculpatory" evidence. As the Court of Military Review recited, "In a later statement to the polygrapher, PVT B had said that she did not feel she was the victim of rape as she enjoyed sex with appellant and she felt she could have done something to prevent their actions 'if she would have wanted to.'" 33 MJ 883, 885 (1991). In my view, such evidence is clearly exculpatory.

Simply stated, we have a case in which neither counsel exercised due diligence. Regardless of who is more blameworthy, appellant was the loser. Since the granted issue focuses on the duty of trial counsel, I am willing to decide the case on the basis of his failure to comply with RCM 701. Accordingly, I concur with the holding in the principal opinion that trial counsel failed to comply with RCM 701.

CRAWFORD, Judge (dissenting):

The principal opinion holds that legal error under RCM 701, Manual for Courts–Martial, United States, 1984, occurred when trial counsel failed to discover and disclose evidence of contradictory statements the rape prosecutrix made to a government polygrapher before trial and that such error substantially prejudiced appellant. I disagree on both points. In my view the real question presented here is what happens when discoverable and potentially exculpatory evidence is made available to the defense through a mechanism other than discovery, *i.e.*, through a pretrial investigation under Article 32, Uniform Code of Military Justice, 10 USC

---

5. As noted above, in footnote 2 trial counsel affirmatively asserted:

> An opportunity will be made to review or reproduce discoverable investigative reports within the possession, custody or control of Trial Counsel. *All of the aforestated informa-*

> *tion has previously been served on the defense in the preferral packet.*

(Emphasis added.) It is undisputed in this case that the alleged victim's post-polygraph statements were not part of the preferral packet.

§ 832, and the defense fails to pursue the matter.

I find most telling in the resolution of this case, the post-trial affidavit of trial defense counsel dated June 12, 1991, in which he states, *inter alia:*

> At the Article 32(b) investigation in this case, both PVT [E] and PVT [B] stated that they had failed polygraph examinations. *Due to other pressing matters at both Fort Bliss and Fort Huachuca and the fact that polygraph examinations are inadmissible at court, I did not examine the CID [Criminal Investigation Command] case file or talk to the CID Agent who conducted the polygraph....* On approximately 9 October 1990, almost 1½ months subsequent to trial, I talked to the polygrapher, SA Gonzalez (who is now Retired) about an unrelated case. He indicated that he conducted a post-polygraph interview with both [E] and [B]. As I remember our conversation, SA Gonzalez said [E] stuck to her story that she had been raped, but [B] said she did not think she was raped by SGT Simmons because she enjoyed the sexual contact with him. Now aware of this fact, I requested a new trial as can be seen in my matters [submitted] under RCM 1105....

(Emphasis added.)

It appears to me that resolution of this case turns not on the actions of government counsel but rather on the actions of trial defense counsel. That counsel was clearly aware before trial that PVT E and PVT B had taken and failed polygraph examinations. He has admitted that "other pressing matters" and the inadmissibility of polygraph examination results caused him to decide not to examine the CID case file or talk to the polygrapher. Thus, it is clear from the record that through reasonable diligence trial defense counsel could have uncovered the evidence of PVT E's and PVT B's post-polygraph interviews. What is not clear from this record is whether tactical considerations, due to appellant's assertion that intercourse did not occur, led appellant and defense counsel to adopt this strategy. Therefore I would remand this case for a determination whether defense counsel was ineffective.

As noted by the principal opinion, RCM 701(a)(6) is a generous rule of military discovery, which provides:

> The trial counsel shall, as soon as practicable, disclose to the defense the existence of evidence known to the trial counsel which reasonably tends to:
>
> (A) Negate the guilt of the accused of an offense charged;
>
> (B) Reduce the degree of guilt of the accused of an offense charged; or
>
> (C) Reduce the punishment.

This rule is based upon Standard 3–3.11(a), ABA Standards, The Prosecution Function at 3.61 (1979), which is further based upon the Supreme Court decision in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Drafters' Analysis, Manual, *supra* at A21–30. This Court has already discussed the scope of the *Brady* protections, as follows:

> The fair trial considerations enunciated in Brady ... were motivated by concern on the part of the Supreme Court with the suppression by the Government of evidence favorable to the defense, rather than a right to discovery for an accused in a criminal case. Generally, the production of this type of evidence is required and reversal mandated where, after trial, such information is discovered which was known to the prosecution but which was unknown to the defense. Many courts have held that the Government, under *Brady* ... need not furnish the accused with information he has or which through reasonable diligence, he could obtain himself. As has been stated [in *United States v. Cravero*, 545 F.2d 406, 420 (5th Cir.1977)]:
>
> > The purpose of *Brady* is to assure that the accused will not be denied access to exculpatory evidence known to the government but unknown to him. Irrespective of whether the statement here was exculpatory evidence under *Brady*, a question we do not reach, there is no *Brady* violation when the

accused or his counsel knows before trial about the allegedly exculpatory information and makes no effort to obtain its production.

*United States v. Lucas,* 5 MJ 167, 170–71 (CMA 1978) (footnotes and citations omitted). *See also United States v. Davis,* 787 F.2d 1501, 1505 (11th Cir.) ("the *Brady* rule does not apply if the evidence in question is available to the defendant from other sources"), *cert. denied,* 479 U.S. 852, 107 S.Ct. 184, 93 L.Ed.2d 118 (1986); *United States v. Grossman,* 843 F.2d 78, (2d Cir. 1988) (no *Brady* violation when defendant "knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence") (citation omitted); *Lugo v. Munoz,* 682 F.2d 7, 9–10 (1st Cir.1982) (Government has no *Brady* burden when facts are "available to a diligent" defense attorney). *See Twenty–First Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1990–1991,* 80 Georgetown L.J. 1219–23 (Apr.1992).

A threshold inquiry to succeed on a *Brady* claim is whether the discovery request was specific, general, or requested disclosure of perjured testimony. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Resolution of this inquiry depends upon whether the discovery request pointed with any particularity to the evidence desired. If appellant "made only a general discovery request ..., in order [for an item] to be 'material' under *Brady* it must be 'obviously exculpatory in nature.'" *See United States v. Hemmer,* 729 F.2d 10,14 (1st Cir.) (quoting *United States v. Ferreira,* 625 F.2d 1030, 1033–34 (1st Cir.1980), *cert. denied* in *Hemmer,* 467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984)). This means that the evidence must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* (quoting *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976)). *See United States v. Imbruglia,* 617 F.2d 1, 5 (1st Cir.1980). Depending upon its impact on the defense strategy of this case, the post-polygraph interview of Private B could be

of such significance. Therefore, it is not necessary to debate whether the discovery request in this case was general or specific.

I have no reluctance in holding that trial counsel should have provided notice to the defense of the polygraph examinations and that it was a technical violation of RCM 701(a)(6) not to have done so. However, as this Court recognized in *Lucas,* there is no *Brady* violation where the accused has obtained or through reasonable diligence could obtain such evidence. The rationale underlying *Brady* is to ensure that the defense obtains exculpatory evidence known by the Government but not known to the defense. However, when the material is known to the defense, *Brady* then becomes inapplicable. If *Brady* is inapplicable, so is RCM 701(a)(6) because it is based on *Brady.* Here, at the Article 32 investigation, the defense knew that PVT B had failed a polygraph examination and could have pursued the matter by talking to the polygrapher and retrieving any documents.

The principal opinion mentions (38 MJ at 381) comments by defense counsel in an October 26, 1990, document entitled "Addendum to Post–Trial Matters for the Convening Authority Under RCM 1105," implying that "he may have had access to" the report of the polygrapher after trial counsel allowed it. What trial defense counsel had stated was this:

In order to receive the results of the polygraph examinations [at issue], I called CID. They told me I couldn't receive the information without permission of the prosecutor. I called the prosecutor, waited a few days for the prosecutor and CID agent to speak with each other, and then finally got the results of the polygraph examination. *And this was after trial!*

The principal opinion implies that the necessary call to the prosecutor was a denial of access to the information. I do not find this to be a failure-of-access case—defense counsel received the requested information a few days after his request. It is unfortu-

nate, however, that trial defense counsel failed to make the request until *after trial!* Reasonable delay does not equate to denial of access. If trial defense counsel believes the delay is unreasonable, counsel can always request the intervention of the judge to resolve access disputes with prosecutors and CID agents. *See* RCM 701(e) and (g)(3).

COX, Judge (dissenting):

I concur with Judge Crawford's dissent.

The majority holds that RCM 701(a)(2)(B), Manual for Courts–Martial, United States, 1984, places an "affirmative duty" on trial counsel "to seek out" this Criminal Investigation Command (CID) report and *examine* it for exculpatory evidence for the defense. That is a difficult, if not impossible, requirement.

How can government counsel know what is or is not exculpatory unless they are privy to the theories of the defense? All the Government has to do is provide the reports. It is the duty of the defense counsel to examine them.

Here, trial counsel made *everything* he had available to the defense. The defense chose not to take advantage of the discovery opportunity.*

I wonder if the reason the defense was not interested in the CID part of the polygraph results is because appellant *denied having intercourse* with the victim. The question of consent versus non-consent was not the issue. "O what a tangled web we weave, When first we practise to deceive!" Sir Walter Scott, *Marmion* canto 6, st. 17 (1808), quoted from *The Oxford Dictionary of Quotations* 560(8) (4th ed.1992).

---

* Whether counsel failed to exercise due diligence is another question. *See United States v. Scott,* 24 MJ 186 (CMA 1987).