UNITED STATES, Appellee,

v.

Staff Sergeant James A. KINZER, 409–17–0615, United States Army, Appellant.

ACMR 9102529.

U.S. Army Court of Military Review.

31 Jan. 1994.

For Appellant: Joseph W. Kastl (argued); Captain Alison L. Becker, JAGC (on brief).

For Appellee: Captain Robert W. Clark, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Major Joseph C. Swetnam, JAGC, Major Kenneth T. Grant, JAGC (on brief).

Before CREAN, MORGAN, and GONZALES, Appellate Military Judges.

## OPINION OF THE COURT

GONZALES, Judge:

Pursuant to his pleas, the appellant was found guilty, by a military judge sitting as a general court-martial, of conspiracy, larceny, and solicitation of another to commit an offense in violation of Articles 81, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921, and 934 (1988) [hereinafter UCMJ]. The appellant was sentenced to a dishonorable discharge, confinement for seven years, and reduction to Private E1. In compliance with the terms of a pretrial agreement, the convening authority suspended for two years that part of the sentence extending to confinement in excess of six years, but otherwise approved the sentence as adjudged.

Before this court, the appellant asserts twelve assignments of error, but only one requires discussion. The appellant contends that the trial counsel, Captain B, committed prejudicial error by failing to disclose exculpatory matters to the defense team prior to trial.[1] We agree, in part, but affirm the findings of guilty and the sentence.

In the spring of 1991, the appellant had several discussions with another member of the 57th Ordnance Detachment, Staff Sergeant (SSG) Shattles, about using an Improvised Explosive Device (IED) to rob an armored car when it made a stop at the Crestar Bank on Fort Belvoir, Virginia. Staff Sergeant Shattles reported these discussions to law enforcement authorities and agreed to assist them in monitoring and recording future conversations that he had with the appellant. Although the appellant was unaware that several of his conversations with SSG Shattles were being monitored and recorded, he called off the robbery when the third co-conspirator, Sergeant (SGT) Hubble, informed the appellant that he was the subject of a criminal investigation.[2] The appellant was court-martialed and sentenced on 30 September 1991. In February and March 1992, several post-trial Article 39(a), UCMJ, sessions were held to resolve multiple allegations by the appellant. On 12 March 1992, the military judge made special findings as to each allegation, none of which disturbed the results of the court-martial.

One of the allegations considered at the post-trial Article 39(a), UCMJ, sessions concerned the alleged withholding of evidence by Captain B. Staff Sergeant Shattles made four sworn statements at the Fort Belvoir office of the Criminal Investigation Command (CID): the first one on 22 March 1991, the second in the morning of 27 March 1991, and the final two during the afternoon and evening of 27 March 1991. The first two statements were disclosed to the defense team in the preferral packet and were supportive of the government's case against the appellant. The defense team believed that these were the only two statements that SSG Shattles provided to the CID. They were unaware of SSG Shattles' final two statements, which he made immediately after he indicated deception on a polygraph examination. The defense team did not see these two statements until three months after the appellant's trial, when they were asked by the appellate defense counsel to compare a copy of the entire CID case file with what they had been given by the government prior to trial. In these two statements, SSG Shattles indicated that he may have initiated the discussion with the appellant to rob the armored car. This evidence could have been favorable to the defense on the charge alleging that it was the appellant who actually solicited SSG Shattles to commit the offense of robbery.

We note that there was conflicting testimony during the post-trial Article 39(a), UCMJ, sessions between the defense team and Captain B on several matters such as:

---

1. During oral argument, the civilian appellate defense counsel observed that two of the three judges participating in the review of the appellant's case also participated in the opinion issued in the companion case of *United States v. Hubble*, 36 M.J. 780 (A.C.M.R.1993). He indicated that he considered objecting to the participation of these two judges in the instant case, but concluded that he would not. This court's internal operating procedures provide that companion cases will be assigned to the same panel.

2. Further detailed facts about this case are provided in *Hubble*, 36 M.J. at 781–783.

(1) Whether Captain B received the defense's written supplemental discovery request, dated 22 July 1991, Appellate Exhibit XXVI, that specifically asked for SSG Shattles' polygraph file and any statements he made in conjunction with that examination;

(2) Whether one member of the defense team made an oral request to Captain B for all of SSG Shattles' statements;

(3) Whether the defense team received a copy of the final CID report from Captain B in early September 1991; and

(4) Whether this copy of the final CID report contained SSG Shattles' last two statements.

We need not resolve these conflicts in order to decide this case. The testimony was clear that prior to the appellant's trial, the defense team submitted a comprehensive discovery request to Captain B, dated 17 June 1991, which was continuing in nature. In part, this request asked for all statements made by SSG Shattles and the results of any polygraph examinations. In his response, dated 6 August 1991, Captain B indicated that these documents had been "previously provided" to the defense. He explained in his testimony that this meant that he had provided "[e]verything that I had in my possession at the time." Captain B was unaware of SSG Shattles' last two statements on 6 August 1991.

What is disturbing to this court is Captain B's admission that he became aware of SSG Shattles' last two sworn statements shortly before 22 August 1991, the date of SGT Hubble's court-martial. Instead of supplementing his 6 August 1991 response to the defense's discovery request by providing these two statements to the defense, he waited until early September 1991, when he received the final CID report. He assumed that this report contained SSG Shattles' last two sworn statements. He made an effort to give a copy of this report to the defense team and assumed that they received it.

We are also concerned with Captain B's views on disclosure based on his testimony that, "I can't be held to a duty to disclose" evidence in a CID case file to the defense "if I don't have knowledge of it."

We believe that Captain B's failure to immediately provide SSG Shattles' last two statements to the defense team when he became aware of them and his attitude about his duty to seek out and disclose evidence in a CID case file to the defense are the type of conduct condemned by the Court of Military Appeals in *United States v. Simmons*, 38 M.J. 376 (C.M.A.1993). There, the trial counsel, in response to a defense discovery request, failed to discover and disclose evidence of contradictory statements made by an alleged rape victim to a CID polygrapher and recorded in his official report. In reflecting upon Rule for Courts–Martial 701(a)(2)(B) [hereinafter R.C.M.], Chief Judge Sullivan wrote:

Trial counsel must exercise due diligence in discovering such reports not only in his possession but also in the possession, control, or custody of other "military authorities" and make them available for inspection. *Thus trial counsel in this case had a duty to seek out and examine the polygraph-report evidence in the possession of military investigative authorities which was favorable to the defense.*

*Simmons*, 38 M.J. at 381 (emphasis added).

Chief Judge Sullivan also emphasized R.C.M. 701(a)(6) which states:

(6) Evidence favorable to the defense. The trial counsel shall, as soon as practicable, disclose to the defense the existence of evidence known to the trial counsel which reasonably tends to:

(A) Negate the guilt of the accused of the offense charged;

(B) Reduce the degree of guilt of the accused of an offense charged; or

(C) Reduce the punishment.

*Id.*

In the case before us, we find that Captain B failed to discharge his duty under R.C.M. 701(a)(2)(B) and (a)(6). The defense submitted a discovery request to Captain B on 17 June 1991, which was continuing in nature. Captain B provided various documents to the defense, but waited fifty days before responding to the discovery request in writing. There is no indication during these fifty days that Captain B sought out, examined, or made available to the defense the entire polygraph examination report, including SSG Shattles' last two statements. Subsequently, Captain B became aware of SSG Shattles'

last two statements, but he again waited at least two weeks and then assumed that he was providing the statements to the defense via a copy of the final CID report. Due to a miscommunication between the defense and Captain B in providing a copy of the final CID report to the defense, the defense never saw SSG Shattles' last two statements until three months after the appellant's trial. Although the military judge found no intentional misconduct by Captain B with respect to disclosing SSG Shattles' last two statements to the defense, we find that Captain B's attempts to accomplish his duty in this regard were especially careless and an example not to be followed by other trial counsel.

As in *Simmons,* we must determine whether the appellant was prejudiced by the trial counsel's failure to disclose known exculpatory evidence to the defense. After reviewing the providence inquiry[3] and the testimony of both trial defense attorneys,[4] we agree with the military judge's special findings that:

> [B]y preponderance of the evidence—that the defense did not have the two statements of Sergeant Shattles that are in issue that are Appellate Exhibits XXI and XXII.... I specifically find now beyond a reasonable doubt that a lack of the complete statements had no impact on the conduct of the defense or on the outcome of this case.[5]

Accordingly, we find the undisclosed statements did not undermine the defense in preparing for and representing the appellant at his court-martial.

We have considered the remaining assignments of error, including those personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and find them to be without merit. We specifically reviewed with great care the appellant's claim that his trial defense team fell short of the competency standards under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We find that the appellant has failed to meet his heavy burden of showing that his trial defense team's performance was deficient and that the deficiency resulted in prejudice. Accordingly, the strong presumption that his defense team was competent prevails. *Strickland,* 466 U.S. at 698–700, 104 S.Ct. at 2070–71; *United States v. Crum,* 38 M.J. 663 (A.C.M.R.1993).

The findings of guilty and the sentence are affirmed.

Senior Judge CREAN and Judge MORGAN concur.

---

**3.** During the providence inquiry, the appellant provided details about the offenses that he would have personal knowledge of and that did not appear elsewhere in the record of trial or in the allied papers, such as referring to the homemade explosive device as an "IED"; explaining the two demolition shots at Fort A.P. Hill by saying, "One was an anti-tank missile and the other was a 40 millimeter grenade."; indicating that the two blasting caps he took were in a "plastic container ... to keep them from being—they are sensitive to shock and friction."; and providing the circumstances surrounding the taking of technical manual TM–31–201–2 from the safe in the security room in Building 2285.

**4.** Both trial defense counsel recognized that the contents of the taped conversations between the appellant and SSG Shattles were very damaging to their case. The lead trial defense counsel described the situation thusly: "In my professional assessment those statements made no difference in the eventual outcome." and "What killed us were the tapes."

**5.** The military judge also found that the defense received prior to trial the essential substance of SSG Shattles' last two statements when they received the polygraph examination report, Appellate Exhibit XXIX. He concluded that the defense "could have had by due diligence or reasonable efforts located the complete statements ... prior to trial by reviewing the CID case file." Again, we note that Captain B failed to perform his duty. The defense did not receive Appellate Exhibit XXIX from Captain B, but instead were given it by the trial defense counsel who represented SGT Hubble. We also note that *Simmons* was decided eighteen months after the military judge made his special findings. With respect to his special finding that the defense could have exercised due diligence to find evidence in the CID case file, we read *Simmons* and R.C.M. 701(a)(2) and (6) to place a higher "due diligence" requirement on the trial counsel. A trial counsel's failure to satisfy this requirement will not be excused upon a showing that the undisclosed evidence could have been discovered by a reasonably diligent defense counsel.