UNITED STATES, Appellee,

v.

Private First Class Clifford WILLIAMS, Jr., United States Army, Appellant.

ARMY 9501893.

U.S. Army Court of Criminal Appeals.

7 Nov. 1997.

For Appellant: Captain Thomas Jay Barrett, JA (argued); Lieutenant Colonel Michael L. Walters, JA (on brief); Colonel John T. Phelps II, JA; Major Leslie A. Nepper, JA.

For Appellee: Captain Thomas N. Auble, JA (argued); Lieutenant Colonel Eva M. Novak, JA; Major Virginia G. Beakes, JA (on brief); Lieutenant Colonel Frederic L. Borch III, JA.

## OPINION OF THE COURT

CARTER, Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of aggravated assault (two specifications) and false swearing in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 (1988) [hereinafter UCMJ]. The approved sentence is a dishonorable discharge, confinement for nine years, forfeiture of all pay and allowances, and reduction to Private E1. This case is before the court for review under Article 66, UCMJ.

We heard oral argument on four issues.[1] We hold that: (1) false swearing is not a lesser included offense of perjury; (2) the administrative credit authorized by Rule for Courts–Martial 305(k) [hereinafter R.C.M.] is applicable to R.C.M. 305(l) violations committed under color of law pursuant to Army Regulation 27–10, Legal Services: Military Justice, para. 9–5 (8 August 1994) [hereinafter AR 27–10]; and, (3) a trial counsel's duty to discover and disclose favorable defense evidence includes evidence known to the trial counsel, the police, or others acting on the government's behalf in the particular case being investigated and prosecuted, but does not include evidence in unrelated police investigative files.

## I. FALSE SWEARING

Prior to his conviction in this case, appellant was convicted at an unrelated special court-martial on 26 July 1995 and received an approved sentence which included thirty days of confinement. In the instant trial, the government charged appellant with perjury for alleged false testimony during his 26 July 1995 court-martial. The military judge ruled that the perjury charge was defective because the alleged false statement did not concern a "material" matter in the prior judicial proceeding, a required element for perjury. See UCMJ art. 131. Instead of dismissing the perjury specification, the military judge ruled that the offense of false swearing is a lesser included offense of perjury and converted the perjury specification into a false swearing specification. Appellant now appeals his conviction for that false swearing specification.

 The government concedes, and we agree, that the military judge's ruling was erroneous. False swearing is not a lesser included offense of perjury. Manual for Courts–Martial, United States (1995 ed.), Part IV, para. 79(c)(1) [hereinafter MCM, 1995]; *United States v. Smith*, 9 U.S.C.M.A. 236, 26 C.M.R. 16, 18, 1958 WL 3282 (1958); *United States v. Byard*, 29 M.J. 803, 810 (A.C.M.R.1989); *United States v. Kennedy*, 12 M.J. 620, 622 (N.M.C.M.R.1981); *United States v. Warble*, 30 C.M.R. 839, 841, 1960

---

1. I. WHETHER, ASSUMING THAT THE FALSE SWEARING CHARGE IS DISMISSED, SENTENCE RELIEF IS APPROPRIATE.

II. WHETHER ANY ADDITIONAL CREDIT IS DUE AS A RESULT OF APPELLANT'S PRETRIAL CONFINEMENT.

III. WHETHER THE APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE GOVERNMENT'S FAILURE TO DISCLOSE EXCULPATORY EVIDENCE REQUESTED DURING DISCOVERY [sic], SPECIFICALLY, A KNIFE IN THE GOVERNMENT'S POSSESSION AT THE TIME OF TRIAL, OWNED BY A CRITICAL WITNESS AGAINST THE APPELLANT, WHERE SUCH KNIFE WAS IN ALL PROBABILITY THE WEAPON USED IN AN AGGRAVATED ASSAULT OF WHICH APPELLANT NOW STANDS CONVICTED.

IV. THE EVIDENCE IS INSUFFICIENT IN LAW AND FACT TO SUPPORT FINDINGS OF GUILT [sic] TO SPECIFICATION 1 OF THE CHARGE (AGGRAVATED ASSAULT) AS THE AGGRAVATED ASSAULT WAS COMMITTED BY ANOTHER. (Citations omitted).

WL 4702 (A.F.B.R.1960), *aff'd,* 12 U.S.C.M.A. 386, 30 C.M.R. 386, 1961 WL 4457 (1961). We reject the government's argument that this finding of guilty did not affect the sentence. We will dismiss this charge and reassess the sentence.

## II. PRETRIAL CONFINEMENT

■ Appellant was placed in pretrial confinement on 2 September 1995 pending trial on the charges in this case. On 4 September 1995, a part-time military magistrate reviewed appellant's pretrial confinement as required by R.C.M. 305(i)(2) and ordered appellant's release. Under AR 27–10, para. 9–5, the government "appealed" appellant's release from pretrial confinement to the supervising military judge, alleging an abuse of the military magistrate's discretion. On 8 September 1995, the supervising military judge ordered appellant back into pretrial confinement where he remained for forty-five days until his trial on these charges. Such "appeals," absent the discovery of new evidence or misconduct that justifies confinement, are invalid. *Keaton v. Marsh,* 43 M.J. 757, 760 (Army Ct.Crim.App.1996); *see also* R.C.M. 305(*l*). There was no new evidence or additional misconduct that justified reconfinement in this case.

■ Appellant was given forty-five days credit for his forty-five days of pretrial confinement. At issue is whether appellant is now entitled to additional credit under R.C.M. 305(k) for the R.C.M. 305(*l*) violation. The government argues that the remedy established by R.C.M. 305(k) unambiguously applies only to noncompliance of subsections (f), (h), (i), or (j) of R.C.M. 305 and is not applicable to a R.C.M. 305(*l*) violation. We do not find the government's argument persuasive.

The President created R.C.M. 305(*l*) in 1984 to give a magistrate's decision to release an accused from pretrial confinement finality and to prevent a "revolving door" situation. M.C.M., 1995, app. 21, R.C.M. 305 analysis, at A21–20 [hereinafter R.C.M. 305 analysis]. R.C.M. 305(*l*) provides:

> *Confinement after release.* No person whose release from pretrial confinement has been directed by a person authorized

in subsection (g) of this rule may be confined again before completion of trial except upon the discovery, after the order of release, of evidence or of misconduct which, either alone or in conjunction with all other available evidence, justifies confinement.

R.C.M. 305(*l*) does not authorize an appeal or review of a magistrate's release decision, absent new evidence or additional misconduct.

The drafters of R.C.M. 305 envisioned that other situations might arise which would render the confinement "illegal" and thereby "trigger the sentence relief requirements. Such violations [will] be tested for specific prejudice, and, where such [is] found, [will] trigger a *requirement to grant relief appropriate to cure the prejudice suffered."* R.C.M. 305(k) analysis at A21–20 (emphasis added). The administrative remedy created by R.C.M. 305(k) is intended to deter illegal pretrial confinement. It provides an administrative credit for *illegal* pretrial confinement in addition to the day-for-day credit for *legal* pretrial confinement required by *United States v. Allen,* 17 M.J. 126 (C.M.A.1984). R.C.M. 305(k) and analysis at A21–20. Ultimately, our decision must ensure "that the remedy for *illegal* pretrial confinement be effective." *United States v. Suzuki,* 14 M.J. 491, 493 (C.M.A.1983), discussing *United States v. Larner,* 1 M.J. 371 (C.M.A.1976) (emphasis added).

Under these facts, we find that appellant was *illegally* confined for forty-five days, even though the military judge who ordered the confinement acted in good faith under color of law pursuant to Army Regulation 27–10. Appellant received forty-five days *Allen* credit as if his pretrial confinement were legal. It was not. The government's argument that appellant is not entitled to additional credit does not address the *illegal* nature of his pretrial confinement. Such a position is not an "effective remedy" and is inconsistent with the intent of R.C.M. 305 "to grant relief appropriate to cure the prejudice suffered." We hold that the administrative credit created by R.C.M. 305(k) is also applicable to the R.C.M. 305(*l*) violation in this

case. We grant appellant another forty-five days of credit against his sentence.

## III. FAILURE TO DISCLOSE PO-TENTIALLY EXCULPATORY EVIDENCE

### A. Facts

On 2 July 1995, Private First Class (PFC) F was driving an automobile with appellant as a passenger. The driver of another car, with Mr. B as a passenger, made derogatory comments to appellant. Ultimately, the cars stopped and a fight ensued. Mr. B and appellant were lying chest-to-chest on the ground fighting when Mr. B felt several blows in the back. After the fight was over, Mr. B returned to his friend's car and discovered he was bleeding significantly from stab wounds in the back. Appellant was convicted of aggravated assault for these stab wounds.[2]

At trial, Mr. B testified that at the time of the fight he thought appellant was the one who was hitting him in the back, but he never saw a knife. On cross-examination, Mr. B admitted that he told police officers and medical personnel on three different occasions prior to trial that appellant could not have stabbed him, and that it must have been the "black girl" (PFC F).

On 5 August 1995, in an unrelated incident, a Specialist (SPC) Carson made a sworn statement to military police reporting that someone had slashed the tires on his car. When asked, "Is anyone angry with you?" SPC Carson replied, "[PFC F]; she always carries a knife." Military Police Investigators (MPI) determined that PFC F and SPC Carson were involved in a separate verbal alteration about two weeks prior to this tire slashing incident. After waiving her rights, PFC F denied slashing SPC Carson's tires. During the investigation, MPI seized a knife from PFC F's room. On 21 August 1995, the trial counsel in appellant's court-martial opined that there was insufficient evidence to title PFC F for damage to SPC Carson's

private property. The investigation was closed without identifying a suspect. At the time, the trial counsel was not aware that PFC F was a witness in the appellant's case. While appellant knew who was with him that night, the government had not yet identified the "black female."

Charges were preferred against appellant on 11 September 1995 for the 2 July 1995 stabbing. The Article 32, UCMJ, investigating officer completed his report on 21 September 1995. At that time the government still had not identified PFC F as the witness to the 2 July 1995 aggravated assault charges pending against appellant. The defense did not request that PFC F be called as a witness at the pretrial investigation hearing.

On 20 September 1995 the trial defense counsel submitted a four page Request for Discovery in appellant's case, which included the following provisions:

> This is a continuing request for ...
>
> Any and all investigations or possible prosecutions pending which could be brought against any witness the government intends to call during the trial. Additionally any probation, parole or deferred prosecution status of any witness....
>
> Any and all evidence in the possession of the government which may be exculpatory or otherwise favorable to the accused.

The government's response, dated 11 October 1995, listed PFC F as a witness, but did not mention any of the information contained in the MPI files concerning SPC Carson's slashed tires, because the trial counsel did not remember (from several weeks before) PFC F's involvement in that case.[3] Additionally, a search of local law enforcement files did not disclose any adverse reference to her. The trial counsel did discover and disclose adverse information concerning other witnesses. At trial, PFC F testified that appellant stabbed Mr. B. The defense theory was that PFC F was lying to protect herself because she committed the stabbing.

---

**2.** Appellant was convicted in this same court-martial in an unrelated specification of aggravated assault by stabbing a soldier in the barracks during a fight on 1 September 1995.

**3.** Appellant does not contest that the trial counsel did not remember that PFC F was investigated in the tire slashing incident.

After appellant's trial, the trial defense counsel discovered[4] the MPI report concerning SPC Carson's tires and raised the government's failure to disclose it as a "legal error" in post-trial matters submitted to the convening authority under R.C.M. 1105. Trial defense counsel did not ask the military judge or the convening authority to convene a post-trial Article 39(a), UCMJ, hearing. *See* R.C.M. 1102.

B. Prosecutor's Duty to Disclose Evidence Favorable to the Defense

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). Subsequent decisions of the Supreme Court[5] and the Court of Appeals for the Armed Forces[6] have refined the scope of a prosecutor's duty to disclose and clarified what is "material."

■■■ Each "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf *in the case*, including the police." *Kyles*, 514 U.S. at 437, 115 S.Ct. at 1567 (emphasis added); *see also Simmons*, 38 M.J. at 381.[7] As a representative of a sovereign, a prosecutor's duty is not to win the case, but to ensure that justice is done. *Bagley*, 473 U.S. at 675 n. 6, 105 S.Ct. at 3380 n. 6; *Agurs*, 427 U.S. at 110–11, 96 S.Ct. at

2400–01. The good faith or bad faith of the prosecutor is immaterial. It is the probative value of the nondisclosed evidence, "not the character of the prosecutor," that determines constitutional error. *Agurs*, 427 U.S. at 110, 96 S.Ct. at 2401; *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97. *Brady's* disclosure requirement applies equally to exculpatory and impeachment evidence. *Kyles*, 514 U.S. at 432–34, 115 S.Ct. at 1565; *Bagley*, 473 U.S. at 676, 105 S.Ct. at 3380.

■ "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine the confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383, *cited with approval in Kyles*, 514 U.S. at 432–35, 115 S.Ct. at 1565–66. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434, 115 S.Ct. at 1566. The test is whether the nondisclosed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435, 115 S.Ct. at 1566. Materiality of nondisclosed evidence is determined "collectively, not item-by-item." *Kyles*, 514 U.S. at 436, 115 S.Ct. at 1567.

---

4. The record does not disclose how trial defense counsel discovered this information.

5. *See Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

6. *See United States v. Romano*, 46 M.J. 269 (1997); *United States v. Stone*, 40 M.J. 420 (C.M.A.1994); *United States v. Charles*, 40 M.J. 414 (C.M.A.1994); *United States v. Simmons*, 38 M.J. 376 (C.M.A.1993); and *United States v. Eshalomi*, 23 M.J. 12 (C.M.A.1986).

7. We note that *Simmons* was based primarily on the language of R.C.M. 701(a)(2)(B) which required the trial counsel to exercise "due diligence" to discover certain reports within the

possession or control of military authorities. That due diligence requirement is missing from the 1994 and 1995 editions of the Manual for Courts-Martial, although we are unable to find the Executive Order which authorized this change. *Accord United States v. Sebring*, 44 M.J. 805, 808 n. 1 (N.M.Ct.Crim.App.1996). The records of the Army Criminal Law Division, Office of the Judge Advocate General, indicate that this deletion was apparently a typographical omission. Until this issue is clarified or corrected, counsel and judges should treat R.C.M. 701(a)(2)(B) as if it still contained the words "or by the exercise of due diligence may become known." *Simmons* and *Kyles* were recently cited together by our superior court in *Romano*, 46 M.J. at 273, indicating to us that *Simmons* is still sound precedent. Under either version of R.C.M. 701(a)(2)(B) the trial counsel did not have a duty to discover the report in question under the acts of this case.

## C. Discussion

A trial counsel's duty to disclose favorable defense evidence under the *Brady* line of cases only includes information which the trial counsel has personal knowledge of or is known to criminal investigators or others that are working on *the case* being investigated and prosecuted. We are aware of no case law that extends the duty to discover evidence to information contained in other government files unrelated to the investigation of that particular accused's misconduct. Appellant concedes that no police or trial counsel file *pertaining to his misconduct in this case* contained the undisclosed evidence. Trial counsel is not required "to search for the proverbial needle in a haystack. He need only exercise due diligence in searching his own files and those police files readily available to him." *Simmons*, 38 M.J. at 382 n. 4. We find that trial counsel had no duty to discover this evidence, which was located in an unrelated MPI file in which PFC F was listed as a witness, not a subject.

Assuming *arguendo* that the trial counsel had a duty to discover this evidence, we find that the facts in this record do not establish that this information was material. The record established that Mr. B received eight stab wounds, four of which were approximately six inches deep. Neither the record of trial nor the post-trial matters submitted to the convening authority established whether PFC F's knife had a blade large enough to inflict a six inch stab wound. The mere fact that she owns a knife, or even that she allegedly "always carries a knife," does not make her an assailant. The record indicates that appellant also owned at least two knives, neither of which were offered at trial, apparently because they also were not material to this particular assault. The defense offered no evidence to rebut PFC F's eyewitness account of the stabbing or to attack her truthfulness or peaceableness. Appellant did not testify. In fact, the defense presented no case whatsoever on the merits, other than cross-examination of the government's witnesses. Under these circumstances, we find that the undisclosed information was not material because it does not undermine our confidence in the verdict.

## IV. CONCLUSION

We have considered the remaining assignments of error and the matters personally asserted by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit. The findings of guilty of Additional Charge II and its Specification (false swearing) are set aside. Additional Charge II and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for eight years, forfeiture of all pay and allowances, and reduction to Private E1. Appellant will be credited with an additional forty-five days of pretrial confinement against the sentence to confinement.

Senior Judge TOOMEY and Judge JOHNSTON concur.