**UNITED STATES, Appellee,**

v.

**Clifford WILLIAMS, Jr., Private First Class, U.S. Army, Appellant.**

No. 98–0258.
Crim.App. No. 9501893.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 1, 1998.

Decided June 25, 1999.

EFFRON, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN, CRAWFORD, and GIERKE, JJ., joined.

For Appellant: *Captain Thomas Jay Barrett* (argued); *Colonel John T. Phelps, II, Lieutenant Colonel Michael L. Walters,* and *Major Leslie A. Nepper* (on brief); *Lieutenant Colonel Adele H. Odegard.*

For Appellee: *Captain Arthur J. Coulter* (argued); *Colonel Russell S. Estey* (on brief); *Captain Chris A. Wendelbo.*

EFFRON, Judge, delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of aggravated assault (2 specifications) and false swearing (1 specification) in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 USC §§ 928 and 934, respectively. The aggravated assault offenses concerned two separate incidents, one on July 2, 1995, and the other on September 1 of the same year. Appellant was sentenced to a dishonorable discharge, confinement for 9 years, total forfeitures, and reduction to the grade of E–1. The convening authority approved the sentence as adjudged. The Court of Criminal Appeals set aside and dismissed Additional Charge II and its specification (false swear-

ing), but affirmed the findings of guilty with respect to the two specifications of aggravated assault. The court, reassessing the sentence, reduced the period of confinement to 8 years, and affirmed the balance of the sentence. 47 MJ 621, 626 (1997).

On appellant's petition, we granted review of the following issue:

WHETHER APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE GOVERNMENT'S FAILURE TO DISCLOSE EXCULPATORY EVIDENCE REQUESTED DURING DISCOVERY, SPECIFICALLY, A KNIFE IN THE GOVERNMENT'S POSSESSION AT THE TIME OF TRIAL, OWNED BY A CRITICAL WITNESS AGAINST APPELLANT, WHERE SUCH KNIFE WAS IN ALL PROBABILITY THE WEAPON USED IN AN AGGRAVATED ASSAULT OF WHICH APPELLANT NOW STANDS CONVICTED, AND WHERE THE FACT THAT THE KNIFE WAS SEIZED AND POSSESSED BY THE GOVERNMENT WAS KNOWN BY THE WITNESS'S COMPANY COMMANDER WHO AUTHORIZED THE SEIZURE OF THE KNIFE.

We hold that the Government did not violate its disclosure obligations for the reasons set forth in this opinion.

## I. Background

The conviction at issue involves the following incident, as described by the Court of Criminal Appeals:

On 2 July 1995, Private First Class (PFC) F was driving an automobile with appellant as a passenger. The driver of another car, with Mr. B as passenger, made derogatory comments to appellant. Ultimately, the cars stopped and a fight ensued. Mr. B and appellant were lying chest-to-chest on the ground fighting when Mr. B felt several blows in the back. After the fight was over, Mr. B returned to his friend's car and discovered he was bleeding significantly from stab wounds in the back.

47 MJ at 624.

### A. Pretrial disclosure and discovery

Appellant was notified of the pertinent charge against him on September 11, 1995. Defense counsel served a discovery request on trial counsel on September 20, 1995. Appellant's brief on the granted issue focuses on the defense request for "[a]ny and all investigations or possible prosecutions pending which could be brought against any witness the government intends to call during the trial."

Trial counsel responded on October 11, 1995. With respect to the defense request for investigations and prosecutions that "could be brought" against witnesses, trial counsel provided potential impeachment information concerning two of the Government's witnesses to the September 1 incident, but did not identify any investigations or prosecutions that "could be brought" against witnesses to the July 2 incident. With respect to the July 2 incident, trial counsel's response to a separate question concerning "known evidence tending to diminish credibility of witnesses" provided potential impeachment information concerning two government witnesses, the victim and his companion, Mr. G.

In response to an additional question concerning "potential witnesses the government intends to call at trial," trial counsel provided the name, location, and phone number for 25 persons, including the witness involved in the granted issue—appellant's female companion, PFC F.

### B. Trial Proceedings

At trial, the primary evidence against appellant was presented through the testimony of Mr. B, the victim; the physician who treated Mr. B; and PFC F, appellant's companion.

The victim described the verbal altercation and the subsequent physical confrontation with appellant, but stated that he did not see a knife during the incident and that he was unaware of suffering any wounds until after the confrontation. The physician testified

that the wounds were from multiple "penetrating blunt injuries, most probably a stab wound." He added that four of the wounds were "very deep," that the victim suffered two punctured lungs, and that the wounds were "potentially life threatening."

Appellant's companion at the time of the incident, PFC F, who appeared as a prosecution witness, testified that appellant stabbed the victim with a knife in the fight following the verbal altercation.

The central theme of the defense case was to portray PFC F as the guilty party. The defense theory was that PFC F—not appellant—had stabbed the victim. Through cross-examination and in closing argument, defense counsel emphasized that: (1) the victim did not see a knife during the confrontation with appellant; (2) the victim, in his initial statements to law enforcement authorities, said that he had been stabbed by a female; and (3) PFC F had a motive to lie in her testimony against appellant at the trial to cover up her own guilt as the person who stabbed the victim.

The members were not persuaded and returned findings of guilty on the aggravated assault and false-swearing charges related to the July 2 incident, in addition to findings of guilty as to a separate aggravated-assault offense.

## C. Information developed after the trial

After trial, defense counsel learned of an unrelated tire-slashing incident in which PFC F had been questioned by military law enforcement authorities about a month after the July 2 incident. Defense counsel's post-trial submission to the convening authority under RCM 1105 and 1106, Manual for Courts–Martial, United States (1998 ed.), includes military police records describing an incident in which Specialist (SPC) C had reported on August 5 that all four tires on his car had been damaged.[1] In a statement provided to a military police investigator, SPC C had said that he did not know who had damaged his tires and that he had not

been in any recent altercations. In response to a question as to whether anyone was "angry" with him, he had mentioned PFC F and stated that "she always carries a knife." The investigator subsequently had developed additional leads, including information pointing to another person, FMW J, as an individual who had threatened to cut the tires on SPC C's vehicle.

After questioning PFC F and FMW J, the investigator had filed a report noting: (1) Approximately 2 weeks before the tire-slashing incident, PFC F and SPC C "were involved in a verbal confrontation"; (2) both PFC F and FMW J provided statements denying involvement in the incident; and (3) a "knife was found in the room of PFC [F] and was taken as evidence." The military police had closed the property-damage investigation without listing anyone as a subject after obtaining advice from the judge advocate who subsequently served as trial counsel in the present case.

## D. Defense counsel's response

In his post-trial submission in this case, defense counsel asked the convening authority to set aside the findings and sentence or at least grant sentence relief based in part upon trial counsel's failure to provide this information in response to appellant's discovery request. The convening authority did not grant the requested relief.

After appellant raised this matter before the Court of Criminal Appeals, the Government filed an affidavit in which trial counsel stated that he "did not knowingly withhold any information from the defense." Trial counsel noted in his affidavit that, when he learned of PFC F's involvement and determined that she would be a witness at trial, he "informed the defense counsel and conducted a check of local military justice files for any derogatory information." According to trial counsel's affidavit, the property-damage incident "occurred a month or more prior to" his

---

1. The record does not indicate how or when the defense learned of the property-damage incident, showing only that "it was not discovered by the defense until after the verdict had already been entered." The granted issue, as framed by appellant, suggests that the pertinent information was held by PFC F's unit commander.

knowledge of PFC F's involvement in appellant's case, and he "did not remember" the incident with the tires "or any other reference" to PFC F at the time he found that she was going to be a witness in the present proceeding.

In this appeal, appellant does not challenge the veracity of trial counsel's affidavit. Appellant's contention is that trial counsel failed to fulfill his obligation to exercise due diligence in responding to the defense discovery request for "any and all investigations or possible prosecutions which could be brought against any witness the government intends to call during the trial." Final Brief at 8. In appellant's view, this request obligated trial counsel to review the records maintained by PFC F's unit. Counsel argues:

> The real question is whether files related to a witness, specifically, local disciplinary files, are police files for military discovery practices.

The answer to this question, according to appellant, is that "[t]he local files should be considered police files for purposes of military discovery practices." Appellant takes the position that

> [t]here is no comparison in civilian practice, so the issue is one of first impression unique to the military justice system. A military commander holds the unique status as a law enforcement official as well as that of commander.

With respect to the type of records at issue in the present appeal, appellant notes that

> [t]he unit files maintained by the commander contain adverse disciplinary information, non-judicial punishment records, and other information about the individual. These files are maintained to record a soldier's disciplinary and criminal background, and are often used to determine whether a soldier should be administratively eliminated, or in more serious cases, tried by court-martial.

Final Brief at 9.

Applying these principles to the present case, appellant contends that trial counsel failed to exercise due diligence because

> the unit commander actually issued the search authorization to search and seize evidence in PFC [F's] room. Had the trial counsel reviewed the file or asked the commander about any criminal actions involving the government's main witness, PFC [F], he would have discovered the knife. This was not a minor witness; PFC [F] was the key government witness concerning the stabbing. If the Army court had made a proper factual finding that the unit disciplinary files are the functional equivalent of police files, then applying the law, the court would have determined that the trial counsel did not use due diligence to discover and disclose the existence of the knife.

Final Brief at 9–10.

In short, the issue raised by appellant is whether the prosecution is obligated to review unit disciplinary files when the pertinent defense request for information concerning investigations or prosecutions of government witnesses does not specifically request a review of such files.[2]

## II. Discussion

### A. Discovery and disclosure in the military justice system

The military justice system has been a leader with respect to open discovery and disclosure of exculpatory information to the defense. *See* Moyer, *Procedural Rights of the Military Accused: Advantages Over A Civilian Defendant*, 51 Mil.L.Rev. 1, 11–14 (1971). As noted in the Drafters' Analysis accompanying RCM 701, "[m]ilitary discovery practice has been quite liberal," with "broader discovery than is required in Federal [civilian] practice." Manual, *supra* at A21–31; *see United States v. Hart*, 29 MJ 407, 410 (CMA 1990).

---

2. Appellant has *not* challenged trial counsel's statement that he did not remember the earlier property-damage incident during the prosecution of the present case, and appellant does not assert that trial counsel's failure to remember the earlier incident constituted legal error. Appellant's position in the present appeal, which does not depend upon trial counsel's relationship with the prior incident, is that trial counsel should not have limited his review to local police files and that due diligence required a review of the records of PFC F's unit.

The foundation for military discovery practice is Article 46, UCMJ, 10 USC § 846, in which Congress mandated that "[t]he trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." *See United States v. Enloe,* 15 USCMA 256, 258–59, 35 CMR 228, 230–31 (1965). The President has implemented Article 46 by setting forth specific discovery and disclosure responsibilities in RCM 701.[3] We have interpreted RCM 701 and related rules to ensure compliance with the equal-access-to-evidence mandate in Article 46. *See United States v. Eshalomi,* 23 MJ 12 (CMA 1986). We also have interpreted these rules to ensure that discovery and disclosure procedures in the military justice system, which are designed to be broader than in civilian life, provide the accused, at a minimum, with the disclosure and discovery rights available in federal civilian proceedings. *See, e.g., United States v. Walbert,* 14 USCMA 34, 33 CMR 246 (1963) (applying the "Jencks Act," 18 USC § 3500, to military justice discovery practices).

RCM 701(a)(6), which sets forth specific requirements with respect to *"[e]vidence favorable to the defense,"* states:

The trial counsel shall, as soon as practicable, disclose to the defense the existence of evidence known to the trial counsel which reasonably tends to:

(A) Negate the guilt of the accused of an offense charged;

(B) Reduce the degree of guilt of the accused of an offense charged; or

(C) Reduce the punishment.

The foregoing provision implements the Supreme Court's decision in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (due process violated where prosecution withholds information requested by defense that is material to the issue of guilt or sentence). *See* Manual, *supra* at A21–32. As a general matter, evidence that could be used to impeach a government witness is subject to discovery. *See United States v. Bagley,* 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Green,* 37 MJ 88, 89 (CMA 1993); *United States v. Eshalomi, supra.*

If information is withheld impermissibly, the test for prejudicial error is whether there "is a 'reasonable probability' of a different result" had the suppressed evidence been disclosed to the defense. *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (noting that the defense need not demonstrate by a preponderance of the evidence "the suppressed evidence would have resulted" in acquittal).

Assuming that the information is of a type that is discoverable under RCM 701 and *Brady,* the threshold question is whether the information at issue was located within the parameters of the files that the prosecution must review for exculpatory material.[4]

---

3. Trial counsel, for example, is obligated to disclose numerous matters without a defense request, including papers accompanying the charges; sworn or signed statements in the possession of trial counsel; the names and addresses of prosecution witnesses; and prior convictions of the accused that may be offered on the merits. RCM 701(a)(1), (3), and (4). Additional information regarding documents, tangible objects, and reports, and specified sentencing information must be disclosed upon request. RCM 701(a)(2) and (5). There is a continuing duty to disclose matter that is subject to discovery, even after a party responds to a discovery request, if "a party discovers additional evidence or material previously requested or required to be produced." RCM 701(d). There are additional rules concerning *disclosure* of particular types of evidence. *E.g.,* Mil.R.Evid. 301(c)(2), Manual, *supra* (immunity or leniency promised to a witness); Mil.R.Evid. 304(d)(1) (statements made by

the accused); Mil.R.Evid. 311(d)(1) (evidence seized from the accused); Mil.R.Evid. 321(c)(1) (evidence of pretrial lineups of the accused). Moreover, in a general court-martial, such as the present case, the accused has the opportunity to use the Article 32, UCMJ, 10 USC § 832, pretrial investigation to obtain evidence, with extensive opportunity to confront and cross-examine witnesses prior to trial.

4. The defense, in its discovery request, asked for "[a]ny and all evidence in the possession of the government which may be exculpatory or otherwise favorable to the accused." The Government responded by noting that a test on a knife found in appellant's room "met with negative results." In the present appeal, the issue is not whether the information about the unrelated property-damage investigation was exculpatory, but whether trial counsel was obligated to review

Although the core files that must be reviewed are readily ascertained, the outer parameters must be ascertained on a case-by-case basis. The core files that must be reviewed include the prosecution's files in the case at bar. *See United States v. Simmons,* 38 MJ 376 (CMA 1993). Beyond those materials, the prosecution has "a duty to learn of any favorable evidence known to the others acting on the government's behalf *in the case,* including the police." *Kyles, supra* at 437, 115 S.Ct. 1555 (emphasis added). In *Simmons,* a case dealing with records of another military agency involved in the investigation of the accused, we held that the prosecution "must exercise due diligence" in reviewing the files of other government entities to determine whether such files contain discoverable information. 38 MJ at 381.

With respect to law enforcement files, we observed in *Simmons* that the prosecution is not required "to search for the proverbial needle in a haystack," but need only review prosecution "files and those police files readily available" to the prosecution. 38 MJ at 382 n. 4. To the extent that relevant files are known to be under the control of another governmental entity, the prosecution must make that fact known to the defense and engage in "good faith efforts" to obtain the material. *See* Standard 11–2.1(a), Commentary, American Bar Association, Criminal Justice Discovery Standards 14 n. 9 (3d ed.1995).

■ The scope of the due-diligence requirement with respect to governmental files beyond the prosecutor's own files generally is limited to: (1) the files of law enforcement authorities that have participated in the investigation of the subject matter of the charged offenses, *see, e.g., United States v. Bryan,* 868 F.2d 1032 (9th Cir.), *cert. denied,* 493 U.S. 858, 110 S.Ct. 167, 107 L.Ed.2d 124 (1989); (2) investigative files in a related case

maintained by an entity "closely aligned with the" prosecution, *see, e.g., United States v. Hankins,* 872 F.Supp. 170, 172 (D.N.J.), *aff'd,* 61 F.3d 897 (3d Cir.), *cert. denied,* 516 U.S. 968, 116 S.Ct. 427, 133 L.Ed.2d 343 (1995); and (3) other files, as designated in a defense discovery request, that involved a specified type of information within a specified entity, *see, e.g., United States v. Veksler,* 62 F.3d 544, 550 (3d Cir.1995).

In short, the parameters of the review that must be undertaken outside the prosecutor's own files will depend in any particular case on the relationship of the other governmental entity to the prosecution and the nature of the defense discovery request.

B. The specific issue addressed
by appellant

■ In the present case, appellant contends that trial counsel failed to disclose information covered by the defense discovery request for "any and all investigations or possible prosecutions which could be brought against any witness the government intends to call during the trial." Final Brief at 8.[5] The granted issue as framed by appellant does not fault trial counsel for failing to disclose the details of the investigation concerning the unrelated property-damage investigation, but addresses only the failure to disclose "a knife." Although appellant claims that a knife taken from PFC F during a separate property-damage investigation "was in all probability the weapon used in an aggravated assault of which appellant now stands convicted," appellant has failed to provide evidentiary support for this assertion. Even though appellant learned of the knife shortly after trial, appellant made no effort to have it examined or tested to determine its relevance to the present case. Appellant did not ask that the knife (or a photograph) be made a part of the record in the present case or move for a post-trial session or a new

the unit commander's files in which the information was located.

5. The defense has not cited or relied upon a separate defense discovery request for "[a]ccess to all personnel and medical records of all potential witnesses to include the official military personnel file, officer record brief, 201 file, and unit

('SMIF') file of any potential witness...." The trial counsel responded, "These records are available to defense." Appellant has not asserted that the government response to this request was deficient as a matter of law or that the defense was otherwise inhibited in obtaining personnel information pertaining to PFC F.

trial based upon newly discovered evidence. At this late date, there is still no evidence before us to demonstrate that the knife was even capable of causing the deep wounds inflicted upon the victim.[6]

If we were to assume, however, that the defense discovery request should be interpreted to include the documents concerning the unrelated property-damage investigation, it is not clear from the defense brief why material held by the unit commander should fall within the scope of trial counsel's due-diligence review under the circumstances of the present case. The defense brief expressly describes the military police "files that listed PFC [F] as a witness" as "unrelated" files that "trial counsel had no duty to review." Final Brief at 8–9. If trial counsel had no duty to review local military police files in an unrelated case, the defense proposition—that unit-commander files should be treated as police files—provides no basis for finding error in the present case, where the unit commander's files at issue also concerned the same unrelated case.

C. The policy question raised by appellant

■ Under appellant's proposal, the prosecution would be required to review the records of the unit to which a government witness is assigned at the time of discovery, regardless whether the defense specifies unit disciplinary information in the discovery request. Although appellant asserts that this requirement should apply only to the unit to which a witness is assigned at the time of discovery, such a limitation is not realistic. Were we to extend the scope of trial counsel's due-diligence responsibilities to include unit files concerning unrelated cases, it would be difficult to find a principled basis for not extending it beyond a witness' current unit commander. Mobility is one of the primary characteristics of modern military life. Servicemembers are subject to frequent transfers for training and operational purposes. Although the information in the present case

apparently was possessed by the witness' commander at the time of the discovery request, the information might well have been in the hands of a previous commander. Likewise, had the witness been transferred after the discovery request was submitted, there is a reasonable likelihood that such information would be in the hands of a later commander. Moreover, it is also reasonably likely that disciplinary information about a servicemember would be in the possession of other military entities, including higher headquarters or centralized national records centers.

The resolution of this matter requires us to determine how best to fulfill the mandate of Article 46 that the defense counsel has an "equal opportunity to obtain witnesses and other evidence." With respect to the files of a prosecutor or the files of an investigative agency acting on the Government's behalf in the case at bar, it is reasonable to place the burden on trial counsel to review those matters without requiring a great deal of specificity in the defense discovery request because these are the types of files that are subject to the direct supervision or oversight by the prosecution. The Supreme Court emphasized in *Kyles v. Whitley, supra,* that the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf *in the case,* including the police." 514 U.S. at 437, 115 S.Ct. 1555 (emphasis added). As noted by the court below, "a prosecutor's duty is not to win the case, but to ensure that justice is done." 47 M.J. at 625.

The prosecutor's obligation under Article 46 is to remove obstacles to defense access to information and to provide such other assistance as may be needed to ensure that the defense has an equal opportunity to obtain evidence. These obligations, however, do not relieve the defense of its responsibility to specify the scope of its discovery request.

---

**6.** The test for relevance is whether evidence tends "to make the existence of any fact more or less probable tha[n] it would be without the evidence." Mil.R.Evid. 401; *United States v. Carter,* 47 MJ 395, 396 (1998). The burden of persuasion—and, correspondingly, the "risk of nonpersuasion"—in "establishing relevance ... and helpfulness falls on the proponent" of the contested evidence. *United States v. Berg,* 44 MJ 79, 80 (1996). Appellant failed to carry his burden.

With respect to files not related to the investigation of the matter that is the subject of the prosecution, there is no readily identifiable standard as to how extensive a review must be conducted by the prosecutor in the preparation of a case. The defense need for such files is likely to vary significantly from case to case, and the defense is likely to be in the best position to know what matters outside the investigative files may be of significance. The Article 46 interest in equal opportunity of the defense to obtain such information can be protected adequately be requiring the defense to provide a reasonable degree of specificity as to the entities, the types of records, and the types of information that are the subject of the request.

In summary, neither Article 46 nor the *Brady* line of cases requires the prosecution to review records that are not directly related to the investigation of the matter that is the subject of the prosecution, absent a specific defense request identifying the entity, the type of records, and type of information.[7]

### III. Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.

---

7. The issue of when the prosecution properly may ask for a more particularized showing of relevance is a separate matter that we need not address in this opinion.