*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

_____

Before
GASTON, HOUTZ, and MYERS
Appellate Military Judges

_____

**UNITED STATES**
*Appellant*

**v.**

**Justin L. CRAVEN**
Master-at-Arms Third Class (E-4), U.S. Navy
*Appellee*

**No. 202200066**

_____

Decided: 28 June 2022

Appeal by the United States Pursuant to Article 62, UCMJ

Military Judge:
M. Christopher Cox

Arraignment 24 August 2021 before a special court-martial convened at Naval Station Norfolk, Virginia, consisting of officer and enlisted members.

For Appellant:
*Major Kerry E. Friedewald, USMC*
*Lieutenant John L. Flynn IV, JAGC, USN*

For Appellee:
*Lieutenant Christopher B. Dempsey, JAGC, USN*

—————————————

**PUBLISHED OPINION OF THE COURT**

—————————————

PER CURIAM:

This case is before us on an interlocutory appeal pursuant to Article 62(a)(1)(A), Uniform Code of Military Justice [UCMJ].[1] Appellee is charged with wrongful solicitation of abusive sexual contact, in violation of Article 82, UCMJ, for allegedly encouraging a fellow Sailor to touch the buttocks of a third Sailor without her consent.

Upon referral of charges, the Defense moved to compel the disclosure of information relating to whether the Government's principal witness, Master-at-Arms Seaman [MASN] Mike,[2] had served as a cooperating informant [CI] for the Naval Criminal Investigative Service [NCIS]. The Government asserted the government information privilege under Military Rule of Evidence [Mil. R. Evid.] 506 and neither confirmed nor denied the existence of any responsive information. The military judge ordered the Government to submit any responsive information, including whether or not MASN Mike had served as a CI, for in camera review to determine whether it was discoverable to the Defense. When the Government failed to submit anything by the ordered deadline, the military judge dismissed the Charge and Specification in a written ruling, which the Government now appeals.

On appeal, the Government asserts two assignments of error: (1) the military judge clearly erred when he found the requested NCIS materials existed and were relevant to the Defense's preparation; and (2) the military judge erred in applying Mil. R. Evid. 506 to Appellee's discovery request for privileged government information. We find that the military judge erred by applying Mil. R. Evid. 506 instead of Mil. R. Evid. 507 in his ruling, and remand for further consideration under the correct rule.

—————————————

[1] 10 U.S.C. § 862(a)(1)(A).

[2] All names in this opinion, other than those of Appellee, the judges, and counsel, are pseudonyms.

## I. BACKGROUND

In May 2020, after a night of heavy drinking at then MASN Mike's apartment, MASN Hotel allegedly touched Master-at-Arms Third Class [MA3] Sierra on the buttocks while she was asleep. Appellee and MASN Mike were the only two witnesses to this act, for which MASN Hotel pleaded guilty at special court-martial to assault consummated by a battery. At his court-martial, MASN Hotel and the Government stipulated as fact that Appellee "told [MASN Hotel] that he would take a shot of alcohol if [MASN Hotel] touched the *lower back and hips area*" of MA3 Sierra.[3]

In light of this stipulation, MASN Mike is the Government's principal witness for its charge that Appellee solicited MASN Hotel to commit abusive sexual contact by touching MA3 Sierra's "buttocks" without her consent. MASN Mike's account of Appellee's involvement has changed over time. When initially interviewed in August 2020, he told NCIS that Appellee "appeared to be cheering on [MASN Hotel]" when he touched MA3 Sierra.[4] On 20 May 2021, he told the trial counsel that Appellee "told MASN [Hotel] to smack . . . [MA3 Sierra]'s butt."[5] On 9 September 2021, he said that Appellee told MASN Hotel, "If you slap [MA3 Sierra's] a\*\*\*, I will take a shot."[6]

During much of this time, MASN Mike was being investigated, disciplined, and administratively separated for his own misconduct, regarding which the military judge established the following timeline:

> 19 February 2021—NCIS received a tip that MASN Mike and another Sailor had been bragging about using lysergic acid diethylamide and cocaine.

> 19 May 2021—Non-Judicial Punishment (NJP) proceedings were initiated against MASN Mike and the other Sailor.

> 7 June 2021—MASN Mike's and the other Sailor's NJPs were held and separation proceedings were initiated.

> 16 August 2021—Charges were referred in Appellee's case.

---

[3] Appellate Ex. LV at 2 (emphasis added).

[4] *Id.*

[5] *Id.*

[6] *Id.*

13 September 2021—MASN Mike was separated with a General, Under Honorable Conditions discharge.

24 September 2021—The NCIS investigation into MASN Mike closed.[7]

The Government informed the military judge that MASN Mike's illegal drug use had been originally discovered by NCIS during its investigation of this case, but NCIS did not pursue a drug investigation into MASN Mike at that time and only did so after receiving a separate tip in February 2021.

Appellee's trial defense counsel argued that the apparently lenient handling of MASN Mike's case suggested he had been serving as a CI for NCIS, and moved to compel confirmation of that and any related information. The military judge ordered the Government to confirm or deny whether now Mr. Mike had been a government source or had a cooperation agreement with NCIS, and if so, to disclose any associated materials to the Defense. The Government responded indirectly by stating that no CI was used in Appellee's case, and neither confirmed nor denied whether Mr. Mike had worked as a CI in other NCIS cases. Around the same time, the NCIS Director claimed the government information privilege under Mil. R. Evid. 506 over the CI status of Mr. Mike.

The military judge then ordered the Government to disclose Mr. Mike's CI status and any related privileged materials to the court for in camera review, so that he could determine if there was any information that was discoverable to the Defense. The Government declined to file anything by the ordered deadline and moved the military judge to reconsider his order. In response, the military judge dismissed the Charge and its sole Specification.

## II. DISCUSSION

### A. Application of Mil. R. Evid. 701

The Government asserts that the military judge clearly erred when he found the requested NCIS materials existed and were relevant to the Defense's preparation. We review such rulings for an abuse of discretion.[8] A military judge abuses his discretion when he (1) predicates his ruling on findings of fact

---

[7] *Id.* at 3–4.

[8] *United States v. Chisum*, 77 M.J. 176, 179 (C.A.A.F. 2018).

that are not supported by the evidence of record; (2) uses incorrect legal principles; (3) applies correct legal principles to the facts in a way that is clearly unreasonable, or (4) fails to consider important facts.[9]

Discovery in the military justice system is broader than in federal civilian criminal proceedings.[10] Generally, the parties to a court-martial "shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."[11] Under the discovery rules prescribed by the President, the defense must be permitted to inspect any papers or documents "within the possession, custody, or control of military authorities" that are "relevant to defense preparation."[12] In addition, the "[t]rial counsel shall, as soon as practicable, disclose to the defense the existence of evidence known to the trial counsel which reasonably tends to . . . [a]dversely affect the credibility of any prosecution witness or evidence."[13]

The scope of due diligence required with respect to governmental files beyond the prosecutor's own files generally covers:

> (1) the files of law enforcement authorities that have participated in the investigation of the subject matter of the charged offenses; (2) investigative files in a related case maintained by an entity closely aligned with the prosecution; and (3) other files, as designated in a defense discovery request, that involved a specified type of information within a specified entity.[14]

However, "the parameters of the review that must be undertaken outside the prosecutor's own files will depend in any particular case on the relationship of the other governmental entity to the prosecution and the nature of the defense discovery request."[15]

A material government witness's status as a CI falls within the scope of the trial counsel's "duty to learn of any favorable evidence known to the others

---

[9] *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017) (citations omitted).

[10] *United States v. Jackson*, 59 M.J. 330, 333 (C.A.A.F. 2004).

[11] UCMJ art. 46(a).

[12] Rule for Courts-Martial [R.C.M.] 701(a)(2)(A)(i).

[13] R.C.M. 701(a)(6)(D).

[14] *United States v. Williams*, 50 M.J. 436, 441 (C.A.A.F. 1999) (citations and internal quotation marks omitted).

[15] *Id.*

acting on the government's behalf . . . including the police and disclose it to the defense."[16] Our superior court has described the government's failure to identify which of its witnesses are also CIs as "gross governmental misconduct," noting "it is profoundly disturbing that officers of the court would engage in such conduct."[17] This is because

> [t]he prosecutor is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he [or she] is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. [The prosecutor] may prosecute with earnestness and vigor—indeed, he [or she] should do so. But, while [the prosecutor] may strike hard blows, he [or she] is not at liberty to strike foul ones. It is as much his [or her] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.[18]

Here, we find no abuse of discretion in the military judge's order that confirmation or denial of Mr. Mike's CI status and any related privileged materials in NCIS possession be submitted for an in camera discoverability review, as such information reasonably tends to affect the credibility of Mr. Mike. Like our sister court, we find that when it "fail[s] to provide the Defense with information about the CI status of [its material witnesses], the Government essentially preclude[s] the defense from impeaching their credibility and motivation for being involved in the situation involving [Appellee] and his court-martial."[19] Since it is the witness's affiliation with one party over the other that gives rise to such issues of credibility and bias, we find that the impeachment value of a witness's CI status is not limited to the witness's service as a CI in the particular case at hand.

---

[16] *United States v. Claxton*, 76 M.J. 356, 361 (C.A.A.F. 2017) (internal quotation marks and citations omitted).

[17] *Id.* at 361–62 (internal quotation marks and citations omitted).

[18] *Id.* at 362 (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

[19] *United States v. Claxton*, No. ACM 38188 (rem), 2016 CCA LEXIS 649, at *22 (A.F. Ct. Crim. App. Oct. 31, 2016).

**B. Application of Mil. R. Evid. 506 and 507**

The central issue in this interlocutory appeal is whether, despite its claim of privilege, the Government is required to identify Mr. Mike as an informant. Both the parties and the military judge cite the Government's invocation of the government information privilege under Mil. R. Evid. 506 as controlling. However, Mil. R. Evid. 506 expressly states that "[t]his rule does not apply to the identity of an informant" and instead references Mil. R. Evid. 507, which deals specifically with "Identity of Informants."[20]

An "informant" as defined under Mil. R. Evid. 507 is "a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a person whose official duties include the discovery, investigation, or prosecution of a crime."[21] Notably absent from this definition is any indication that the rule only applies when the informant has served in that capacity in the instant case. Similar to Mil. R. Evid. 506, the privilege under Mil. R. Evid. 507 attaches when "claimed by an appropriate representative of the United States . . . ."[22] However, unlike the privilege under Mil. R. Evid. 506, the privilege under Mil. R. Evid. 507 exists only to "the extent necessary to prevent the disclosure of the informant's identity,"[23] and importantly, "no privilege exists . . . if the informant appears as a witness for the prosecution."[24]

Similar to Mil. R. Evid. 506(h)(2)(B), the identity-of-informants privilege further provides that "[i]f the accused has articulated a basis for disclosure under the standards set forth in this rule, the prosecution may ask the military judge to conduct an in camera review of the affidavits or other evidence relevant to disclosure."[25] In addition, "if a claim of privilege has been made under [Mil. R. Evid. 507], the military judge may make any order required by the interests of justice."[26] The rule also provides,

---

[20] Mil. R. Evid. 506(b).

[21] Mil. R. Evid. 507(b)(1).

[22] Mil. R. Evid. 507(c) (further stating that the privilege applies "regardless of whether information was furnished to an officer of the United States or a State or subdivision thereof"); *cf.* Mil. R. Evid. 506(d).

[23] Mil. R. Evid. 507(a).

[24] Mil. R. Evid. 507(d)(1)(B).

[25] Mil. R. Evid. 507(e)(1).

[26] Mil. R. Evid. 507(e)(2).

> If, after a reasonable period of time disclosure is not made, the
> military judge, sua sponte . . . may dismiss the charge or specifi-
> cations or both to which the information regarding the informant
> would relate if the military judge determines that further pro-
> ceedings would materially prejudice a substantial right of the
> accused.[27]

While we recognize that Mil. R. Evid. 507 is normally used in the inverse of the situation we have before us—where the fact that the witness is a CI is known, but the name of the informant remains unknown—a plain reading of Mil. R. Evid. 506 and 507 leads us to the conclusion that Mil. R. Evid. 507 is the proper rule to follow here. There are two elements for the identity of an informant: who the individual is—i.e., his or her name—and that the individual has, in fact, acted as an informant under the rule's definition of that term. Without both of these elements present, the identity of an informant is not known. We therefore conclude that an individual's status as a confidential informant is encompassed within the phrase "identity of an informant" under Mil. R. Evid. 507. Since that is what the information at issue here deals with, we hold that Mil. R. Evid. 507 controls.

The Air Force Court of Criminal Appeals reached a similar conclusion in *United States v. Claxton*, analyzing the government's failure to disclose a material government witness's status as a CI under Mil. R. Evid. 507.[28] As in this case, the name of the witness was known by the defense; however, the fact that the witness was a CI for the Air Force Office of Special Investigations was not known by the defense or even "possibly the trial counsel" (although "members of the legal office were aware of at least the status of" the CI).[29] The issue before the court was whether the government's failure to identify the witness's CI status amounted to a prejudicial discovery violation where the defense had not specifically requested the witness's CI status, which was not learned of until after the appellant was convicted.[30] In citing Mil. R. Evid. 507 as the controlling rule, the court pointed out that the rule "requires the Government to identify a CI if they testify as a witness for the prosecution" when describing the ability of the Government to assert its privilege and request that the military

---

[27] Mil. R. Evid. 507(e)(4).

[28] *United States v. Claxton*, No. ACM 38188 (rem), 2016 CCA LEXIS 649, *7, 19-20 (A.F. Ct. Crim. App. Oct. 31, 2016) (unpublished).

[29] *Id.* at *8.

[30] *See id.*

judge conduct an in camera review.[31] The court also cited Mil. R. Evid. 507 when describing that the CI identified himself publicly as such after the trial, another condition that extinguishes the privilege under the rule.[32]

We agree with our sister court. We find that under Mil. R. Evid. 507 an in camera review can be used to address issues involving a witness's CI status, thus preventing disclosure to the defense of any information over which a privilege has been asserted until the military judge has reviewed it and made a determination as to its privileged status and discoverability. We further find that under Mil. R. Evid. 507 a military judge may order such information to be submitted for in camera review, if the military judge determines the order is "required by the interests of justice."[33] We also find implicit in the rule that even with respect to an ordered disclosure of information to the court for in camera review,

> [i]f, after a reasonable period of time disclosure is not made, the military judge, sua sponte or upon motion of either counsel and after a hearing if requested by either party, may dismiss the charge or specifications or both to which the information regarding the informant would relate *if the military judge determines that further proceedings would materially prejudice a substantial right of the accused.*[34]

## C. Application to the Facts of this Case

The above analysis of the applicable rules leads us to conclude, for two reasons, that the military judge abused his discretion in dismissing the Charge and Specification as a remedy for the Government's failure to comply with his ordered disclosure of information for in camera review. First, irrespective of whether his findings and conclusions are reasonable with respect to R.C.M. 701, we find that in applying Mil. R. Evid. 506 instead of Mil. R. Evid. 507, the military judge used incorrect legal principles to address the assertion of privilege in this case. While the Government elected to invoke privilege over Mr. Mike's CI status and any pertinent information under Mil. R. Evid. 506, we find no ambiguity in that rule's statement that it "does not apply to the identity

---

[31] *Id.* at \*19.

[32] *Id.* at \*20; *see also* Mil. R. Evid. 507(d)(1)(A).

[33] Mil. R. Evid. 507(e)(2).

[34] Mil. R. Evid. 507(e)(4) (emphasis added).

of an informant," to which Mil. R. Evid. 507 instead applies.[35] We therefore conclude the issue must be resolved under Mil. R. Evid. 507.

Second, we find the military judge's dismissal of the Charge and Specification as a remedy for nondisclosure of information for in camera review was not predicated on findings of fact that are supported by the evidence of record. Whether under Mil. R. Evid. 506 or Mil. R. Evid. 507, dismissal is appropriate only where the military judge determines that proceeding without the information ordered for review "would materially prejudice a substantial right of the accused."[36] Based on the record before us, the military judge had no basis to make this determination because, due to the Government's recalcitrance, he had not yet been able to establish, even in camera, whether Mr. Mike was indeed a CI. He therefore had no basis to find that the Government's nondisclosure would materially prejudice a substantial right of Appellee.

Accordingly, we conclude we must remand for further consideration of these issues by the trial court. In doing so, however, we note that even where grounds for dismissal are lacking, a military judge is not without recourse to address a party's failure to comply with his orders regarding the disclosure of information, whether for purposes of conducting an in camera discoverability review or ordering it turned over in discovery to the other party. Depending on the particular situation, the military judge may in his discretion prohibit the party from introducing evidence or calling a witness, enter "such other order as is just under the circumstances,"[37] or even abate the proceedings with respect to any affected charges until the party complies with his order.[38]

## III. CONCLUSION

The Government's appeal is **GRANTED**. The military judge's ruling dismissing the Charge and Specification is **VACATED**. The record of trial is returned to the Judge Advocate General for remand to the convening authority and delivery to the military judge for further proceedings not inconsistent with this opinion.

---

[35] Mil. R. Evid. 506(b).

[36] Mil. R. Evid. 506(e)(5); Mil. R. Evid. 507(e)(4).

[37] R.C.M. 701(g)(3).

[38] *See United States v. Harding*, 63 M.J. 65, 67 (C.A.A.F. 2006) (finding an interlocutory appeal was not authorized under Article 62, UCMJ, where the military judge abated the proceedings as to certain charges for failure of the government to turn over certain information as ordered for in camera review).



FOR THE COURT:

KYLE D. MEEDER
Clerk of Court