# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 22033**

————————————

**UNITED STATES**
*Appellee*

v.

**Bryce T. ROAN**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 8 January 2024

————————————

*Military Judge*: Mark F. Rosenow.

*Sentence*: Sentence adjudged on 9 December 2021 by SpCM convened at Little Rock Air Force Base, Arkansas. Sentence entered by military judge on 27 December 2021: Hard labor without confinement for 3 months, reduction to E-2, and a reprimand.

*For Appellant*: Major Matthew L. Blyth, USAF; David P. Sheldon, Esquire.

*For Appellee*: Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, CADOTTE, and MASON, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge CADOTTE and Judge MASON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

A special court-martial composed of officer members found Appellant guilty, contrary to his pleas, of one specification of wrongfully using cocaine in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] The court members sentenced Appellant to restriction to his residence for 45 days, three months of hard labor without confinement, reduction to the grade of E-2, and a reprimand. The convening authority disapproved the adjudged restriction.

On 30 March 2022, a designated judge advocate completed a review of the record of trial pursuant to Article 65(d), UCMJ, 10 U.S.C. § 865(d). The judge advocate found, *inter alia*, "[t]he findings and sentence are correct in law and fact."

On 7 September 2022, pursuant to Article 69, UCMJ, 10 U.S.C. § 869, Appellant submitted an application requesting The Judge Advocate General (TJAG) "vacate and set aside" the findings and sentence due to "newly discovered evidence consist[ing] of information that Security Forces investigators interviewed individuals and obtained evidence that was exculpatory for [Appellant], but never turned it over to the [D]efense, instead destroying the notes that were made." On 3 March 2023, TJAG found no error prejudicial to Appellant's substantial rights and denied relief.[2]

On 12 May 2023, Appellant applied to this court for grant of review pursuant to Article 69(d)(1)(B), UCMJ, 10 U.S.C. § 869(d)(1)(B), raising a single issue: whether the Government violated Appellant's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and Rule for Courts-Martial (R.C.M.) 701(a)(6) by failing to inform Appellant of exculpatory evidence and destroying an investigative case file. On 22 August 2023, this court granted Appellant's application for review and ordered the Government to file an answer brief, which the Government did on 22 September 2023. Appellant filed a reply brief on 20 October 2023, after receiving several enlargements of time.

Finding no relief is warranted, we affirm the findings and sentence.

---

[1] All references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] On 7 September 2022, Appellant also petitioned TJAG for a new trial pursuant to Article 73, UCMJ, 10 U.S.C. § 873. TJAG denied the petition for a new trial on 3 March 2023.

## I. BACKGROUND

### A. Appellant's Court-Martial

In the summer of 2021, Appellant was stationed at Little Rock Air Force Base (AFB), Arkansas. He shared an off-base residence with two other servicemembers, Staff Sergeant (SSgt) NW and SSgt DB. Appellant and SSgt NW were members of the same squadron. On 7 July 2021, Appellant and SSgt NW were ordered to provide urine samples as part of a unit-wide inspection. The samples provided by Appellant and SSgt NW were sent to the Air Force Drug Testing Laboratory for analysis. Appellant's sample tested positive for the metabolite of cocaine at 574 nanograms per milliliter (ng/mL), and SSgt NW's sample tested positive for the same at 168 ng/mL; the "cutoff" for a sample to be treated as positive was 100 ng/mL.

Appellant's squadron commander preferred the Charge and Specification against him on 28 October 2021, and the convening authority referred the case for trial by special court-martial on 9 November 2021. Appellant was tried, convicted, and sentenced between 6 and 9 December 2021. The Government's findings evidence consisted almost entirely of testimony and exhibits related to Appellant's positive urinalysis result, as well as evidence indicating he was not on leave during the charged time frame. The Defense did not call any witnesses or introduce any exhibits for findings.

### B. Proceedings in SSgt NW's Court-Martial

In the meantime, the convening authority also had referred to a special court-martial one charge and specification alleging SSgt NW had wrongfully used cocaine, but SSgt NW was tried after Appellant. On 14 January 2022, the defense in SSgt NW's trial moved to dismiss the charge and specification due to the Government's failure to disclose and produce exculpatory evidence; the Government opposed the motion. The assigned military judge in SSgt NW's case held a hearing on the motion on 24 January 2022. The following day, the military judge issued a written ruling denying the motion. Appellant successfully moved to attach the ruling to the record in the instant case, and we quote or paraphrase relevant portions of the military judge's findings of fact and conclusions below.

On 20 July 2021, Investigator (Inv) JB of the Security Forces Office of Investigations (SFOI) at Little Rock AFB interviewed SSgt NW about his positive urinalysis result. During the interview SSgt NW stated, "I have no idea, why would I . . . I take a pre-workout [supplement], I don't know if that could make me pop . . . my roommate brought [the pre-workout supplement] back from [a deployed location]. I ran out of mine and took his." SFOI did not follow up on SSgt NW's comments about using a "pre-workout" prior to completing the report of investigation (ROI) on 23 July 2021.

After reviewing the SSgt NW ROI, the Chief of Justice at Little Rock AFB requested SFOI seek evidence to corroborate that SSgt NW used cocaine. This task was assigned to "a brand new, untrained and not yet qualified investigator," Inv NM, who became the acting SFOI noncommissioned officer-in-charge while Inv JB was temporarily absent. Among other steps, on 14 September 2021 Inv NM interviewed SSgt DB, the roommate of both SSgt NW and Appellant. SSgt DB told Inv NM that while on a deployment he ordered online a preworkout supplement sold by "Blackstone Labs," and he brought the supplement back with him when he returned from his deployment in early 2021. The supplement was stored in a location in the shared residence where SSgt NW had access to it.

Inv NM researched pre-workout supplements marketed by "Blackstone Labs," and identified one supplement containing dimethylhexylamine (DMHA). Inv NM also coordinated with the base Drug Demand Reduction Program, which "provid[ed] a hyperlink to the banned supplement list as well as the names of the two Medical Review Officers (MRO) who could discuss whether the banned substance could cause a positive result for cocaine." On 15 September 2021, Inv NM spoke with one of the MROs about DMHA. Although Inv NM did not document the conversation in any way, Inv NM later recalled the MRO stated it was "possible" for DMHA to "cause a positive result for the metabolite of cocaine on a urinalysis" if "taken in the right quantities [and] within the right timeframe." However, in addition to not documenting the conversation, Inv NM was later unsure which MRO he spoke with. The MRO that Inv NM believed he spoke with subsequently "ha[d] no recollection of that conversation, ha[d] no documentation of any search for DMHA[,] and d[id] not believe he was contacted about this issue."[3]

At some point between 14 and 20 September 2021, in coordination with the Little Rock AFB Chief of Justice, SFOI decided to open an investigation on SSgt DB and to expand the investigation of SSgt NW to include suspected use of a "banned substance" in violation of Article 92, UCMJ, 10 U.S.C. § 892. However, at some point between 20 September 2021 and 4 October 2021, it was decided not to pursue the Article 92, UCMJ, investigation as to either SSgt DB or SSgt NW. Inv NM then "deleted the electronic case file . . . and subsequently destroyed the hard copy case file" of the investigation of SSgt DB. References to the Article 92, UCMJ, investigation were also removed from the case file on SSgt NW.

---

[3] The record before us does not identify the second MRO or indicate whether anyone attempted to contact him or her in relation to Inv NM's investigation, SSgt NW's court-martial, or the instant appeal.

The deletion of the case file on SSgt DB was contrary to SFOI policy. When Inv JB returned from his absence and learned of the deletion, he verbally counseled Inv NM regarding the error.

The military judge in SSgt NW's case concluded:

> [T]he Government's discovery violation was grossly negligent, but was not willful or intentional. The uncertified investigators[4] failed to properly document interactions with witnesses that could be deemed exculpatory. Additionally, trial counsel failed to exercise due diligence in reviewing the evidence in the Government's possession, specifically information held by investigators which was not disclosed, failed to adequately evaluate or comply with [d]efense discovery requests, and failed to accurately represent the evidence in their response to [d]efense motions.

However, the military judge found the prejudice to the defense could be adequately "remedied with a continuance and additional time for the [d]efense expert to evaluate all evidence within the Government's possession." Accordingly, she denied the motion to dismiss, but granted a continuance in SSgt NW's case.[5] In May 2022, the court-martial found SSgt NW not guilty of the charge and specification.

## C. Trial Counsel's Declaration

After this court granted Appellant's application for review, the Government moved to attach a declaration from Major (Maj) AN, the former deputy staff judge advocate at Little Rock AFB, which this court granted. Maj AN served as lead trial counsel in both Appellant's and SSgt NW's courts-martial. Maj AN's declaration provided additional information regarding both investigations and trials, relevant portions of which we describe or quote below.

According to Maj AN, no member of the prosecution team for Appellant's court-martial was aware of Inv NM's investigation of the pre-workout supplement. However, Appellant's "trial defense team had access to: (1) SSgt [NW's] interview with SFOI where he references the pre-workout [supplement]; (2) in-

---

[4] Another junior SFOI investigator participated in Inv NM's abortive Article 92, UCMJ, investigation.

[5] In a separate ruling on the same date, which has been attached to Appellant's record, the military judge in SSgt NW's case also denied a related defense motion to dismiss due to lost or destroyed evidence. She noted, *inter alia*, "[t]he evidence that is of most concern, the information allegedly provided by the [MRO], regarding whether or not the presence of DMHA cou[l]d cause a positive urinalysis for the metabolite of cocaine[,] was neither lost nor destroyed. It was never appropriately documented."

person consultation from a forensic toxicologist at trial to explore this defense; and (3) access to SSgt [DB], whom they decided not to call as a witness at trial."

The defense motion to dismiss in SSgt NW's case, described above, was filed after SSgt NW's trial defense counsel interviewed Inv NM. According to Inv NM, the case file he created on SSgt DB for suspected violation of Article 92, UCMJ, "contained no substantive information" because Inv NM did not document what the MRO reportedly told him about DMHA, and because SSgt DB invoked his right to remain silent when Inv NM attempted to interview him. Thus, "the 'case file' consisted of a manila folder, a series of dividers, and blank agent notes with only SSgt [DB's] name and the date of the interview." Although Inv NM also deleted the electronic record of the file, the Government was able to obtain the "metadata" which "corroborated that there was no substantive information in the case file."

At SSgt NW's trial in May 2022, "the trial defense team did not call SSgt [DB] or present any information related to the 'pre-workout' defense."

### D. Trial Defense Counsel's Declaration

When Appellant filed his reply brief, he filed a contemporaneous motion seeking to attach, *inter alia*, a declaration from Captain (Capt) JS, one of Appellant's trial defense counsel. This court granted the motion. Capt JS acknowledged Appellant's trial defense counsel received the SFOI ROI on SSgt NW, which "did contain a reference to a pre-workout supplement that SSgt [NW's] roommate brought back" from his deployment. However, Capt JS asserts trial defense counsel were not aware of the source of the supplement, that the supplement was on a "banned substances" list, that Inv NM had started an investigation into SSgt DB, that Inv NM had consulted with an MRO who opined the substance could possibly cause a positive urinalysis result for a metabolite of cocaine, or that the SFOI file on SSgt DB had been destroyed. Capt JS stated this unknown information "could have been valuable" to Appellant's defense—specifically the purported opinion of an MRO that a false positive was possible, and the erroneous destruction of a case file, which could have been used "to impeach the investigators at the SFOI, the MRO, and the process more generally."[6]

---

[6] Neither party has objected to this court's consideration of the several documents the parties have moved this court to attach to the record, despite these matters being outside the "entire record." *See United States v. Jessie*, 79 M.J. 437, 440–44 (C.A.A.F. 2020). We note Appellant's application for review by TJAG pursuant to Article 69, UCMJ, included as attachments the same rulings on the defense motions to dismiss in SSgt NW's case. Accordingly, these rulings were already attached to the record when

## II. DISCUSSION

### A. Law

"Notwithstanding [Article 66, UCMJ, 10 U.S.C. § 866], in any case reviewed by a Court of Criminal Appeals under [Article 69(d), UCMJ], the Court may take action only with respect to matters of law." Article 69(e), UCMJ, 10 U.S.C. § 869(e).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "Under *Brady*, evidence is material if there is a 'reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Smith v. Cain*, 565 U.S. 73, 73 (2012) (quoting *Cone v. Bell*, 556 U.S. 449, 469–70 (2009)). The United States Supreme Court has extended *Brady*, clarifying "that the duty to disclose such evidence is applicable even though there has been no request by the accused . . . and that the duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citations omitted); *see also United States v. Claxton*, 76 M.J. 356, 359 (C.A.A.F. 2017) (citing *Strickler*).

"A military accused also has the right to obtain favorable evidence under Article 46, UCMJ, 10 U.S.C. § 846 [ ], as implemented by R.C.M. 701–703." *United States v. Coleman*, 72 M.J. 184, 186–87 (C.A.A.F. 2013) (footnotes omitted). Article 46, UCMJ, and these implementing rules provide a military accused statutory discovery rights greater than those afforded by the United States Constitution. *See id.* at 187 (citing *United States v. Roberts*, 59 M.J. 323, 327 (C.A.A.F. 2004)) (additional citation omitted). R.C.M. 701(a)(6) provides that trial counsel

> shall, as soon as practicable, disclose to the defense the existence of evidence known to trial counsel which reasonably tends to [ ] (A) Negate the guilt of the accused for an offense charged; (B) Reduce the degree of guilt of the accused of an offense charged;

this court received the record. When this court grants an application for review pursuant to Article 69(d)(1)(B), UCMJ, we "review the action taken by [TJAG]" in the case. In addition, the Courts of Criminal Appeals may supplement the record when necessary to address issues "raised by the record but . . . not fully resolvable by the materials in the record." *Jessie*, 79 M.J. at 442 (citations omitted); *cf. United States v. Stanton*, 80 M.J. 415, 417 n.2 (C.A.A.F. 2021) (considering documents not included in or attached to the record of trial "because neither party has objected to [the court's] consideration of them"). Accordingly, we are satisfied we may consider the attachments described *supra* consistent with *Jessie*.

> (C) Reduce the punishment; or (D) Adversely affect the credibility of any prosecution witness or evidence.

"[T]rial counsel must review their own case files and must also exercise due diligence and good faith in learning about any evidence favorable to the defense 'known to the others acting on the [G]overnment's behalf in the case, including the police.'" *United States v. Stellato*, 74 M.J. 473, 486 (C.A.A.F. 2015) (quoting *United States v. Williams*, 50 M.J. 436, 441 (C.A.A.F. 1999) (additional citation omitted)).

"[A]n appellate court may resolve a discovery issue without determining whether there has been a discovery violation if the court concludes that the alleged error would not have been prejudicial." *United States v. Santos*, 59 M.J. 317, 321 (C.A.A.F. 2004). "As a general matter, when an appellant has demonstrated error with respect to nondisclosure, the appellant will be entitled to relief only if there is a reasonable probability that there would have been a different result at trial if the evidence had been disclosed." *United States v. Jackson*, 59 M.J. 330, 334 (C.A.A.F. 2004). However, "[w]here an appellant demonstrates that the Government failed to disclose discoverable evidence in response to a specific request or as a result of prosecutorial misconduct, the appellant will be entitled to relief unless the Government can show that nondisclosure was harmless beyond a reasonable doubt." *Roberts*, 59 M.J. at 327 (citation omitted). In addition, "[a] constitutional error is harmless when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Chisum*, 77 M.J. 176, 179 (C.A.A.F. 2018) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 17–18 (2003)) (additional citation omitted).

**B. Analysis**

**1. Initial Considerations**

Appellant contends the Government violated his due process rights under *Brady* as well as his statutory discovery rights under R.C.M. 701(a)(6) by failing to disclose Inv NM's investigation of the pre-workout supplement, including the purported statement by an MRO that DMHA could under certain circumstances produce a positive urinalysis result for the metabolite of cocaine. The Government contends there was no constitutional or statutory violation, and assuming *arguendo* the Government should have disclosed the information pursuant to R.C.M. 701(a)(6), Appellant cannot demonstrate a reasonable probability of a different result. We find Appellant is not entitled to relief.

As an initial matter, we considered whether a remand for additional proceedings was warranted in order to further develop the record. *See* 10 U.S.C. § 866(f)(3); *cf. United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997) (explaining when remand for additional factfinding is appropriate in the context of

conflicting declarations regarding ineffective assistance of counsel claims). We conclude remand is not necessary. The parties' attachments to the record are not materially in conflict, and we find we may resolve the issue based on the record before us.

For purposes of our analysis, we will assume without holding that trial counsel in Appellant's case ought to have known about Inv NM's investigation of SSgt DB's pre-workout supplement. *See Stellato*, 74 M.J. at 486 (citations omitted). This assumption includes the information Inv NM purportedly received from the MRO regarding DMHA's potential to cause a positive urinalysis result, and the fact that Inv NM improperly destroyed the Article 92, UCMJ, investigation files relating to SSgt DB and SSgt NW.

### 2. Whether the Evidence was Constitutionally Required

Next we consider whether this situation implicates Appellant's due process rights under *Brady*, as Appellant argues, or only non-constitutional discovery rights, as the Government contends. The Government has a due process duty to disclose evidence that is material to the accused's guilt or punishment. Evidence is "material" if there is a "reasonable probability" that its disclosure would have produced a different result. *Smith*, 565 U.S. at 73. We do not find the undisclosed information in this case meets that standard of materiality as to Appellant's case.

Trial defense counsel's declaration specifies two ways in which the Defense could have used the information. First, Appellant's trial defense counsel, Capt JS, asserts an MRO's purported belief that DMHA could cause a false positive under certain circumstances was a "crucial fact." However, neither her declaration nor anything else in the record sufficiently links DMHA to *Appellant's* positive urinalysis result. Even if we were to assume: (1) SSgt DB's pre-workout supplement actually contained DMHA (which has not been demonstrated); (2) Inv NM's reported recollection is correct that an MRO actually opined that DMHA could cause a false positive for cocaine (despite the MRO Inv NM identified denying any knowledge of the matter); and (3) there exists an expert witness who would testify to such a possibility (when no such expert has been identified)—the fact remains that nothing in the record indicates Appellant actually used SSgt DB's supplement. This is an important distinction between Appellant's case and that of SSgt NW, who expressly told SFOI he had used the supplement and speculated it might have caused his positive urinalysis result. Without any indication in the record that Appellant used his roommate's supplement, we find no reasonable probability that disclosure of the MRO's purported statement regarding DMHA would have produced a different result in Appellant's trial.

Capt JS proposed a second way the information could have been useful to the Defense: that the failure to preserve evidence and failure to follow procedures could be used to impeach the investigators and the process more generally. However, the errors committed by Inv NM do not directly relate to the urinalysis process or the integrity of the test results. Neither Inv NM nor any other SFOI investigator testified at Appellant's trial. We are not persuaded it is reasonably probable that introducing evidence Inv NM failed to record his purported conversation with an MRO and erroneously destroyed a virtually empty case file on a different individual would have affected the outcome of what was essentially a bare urinalysis case.

### 3. Whether Relief is Warranted for Violation of Appellant's Non-Constitutional Discovery Rights

The next step in our analysis is to determine whether trial counsel violated Appellant's broader, non-constitutional discovery rights under R.C.M. 701(a)(6). Again assuming trial counsel should have been aware of Inv NM's investigation, we do not find any of the four circumstances listed in R.C.M. 701(a)(6) apply. Similar to our analysis above, in the absence of any indication Appellant used SSgt DB's supplement, the purported qualities of DMHA did not "tend" to "negate" or reduce the degree of Appellant's guilt, or to reduce his punishment. Inv NM's failure to record the purported conversation with the MRO and his erroneous destruction of the case file may have adversely affected his credibility, and to an extent the credibility of SFOI more generally; but neither Inv NM nor anyone else from SFOI was called to testify in Appellant's trial. The Government's case consisted almost entirely of witnesses and documents related to the collection and testing of Appellant's urine sample. SFOI's investigation had essentially no influence on the evidence in Appellant's trial. Accordingly, assuming trial counsel had been aware of Inv NM's activities, we do not find R.C.M. 701(a)(6) compelled their disclosure in Appellant's case.

Furthermore, assuming *arguendo* R.C.M. 701(a)(6) did require disclosure, we do not find the error was prejudicial. The usual standard for demonstrating prejudice from non-constitutional discovery errors is whether a reasonable probability exists that disclosure would have yielded a different result. *See Jackson*, 59 M.J. at 334. However, the heightened "beyond a reasonable doubt" standard applies in two situations: when the defense made a specific request for the information, or when there was prosecutorial misconduct. *Roberts*, 59 M.J. at 327 (citation omitted). We do not find either situation applies here. Appellant does not contend he made a specific request for the undisclosed information. Nor do we find prosecutorial misconduct with respect to Appellant's court-martial. Trial counsel in Appellant's case did not knowingly or intentionally withhold discovery; they were simply unaware of Inv NM's actions and the Article 92, UCMJ, investigations into SSgt DB and SSgt NW. It is true that

the military judge in SSgt NW's case found the Government, including trial counsel, "grossly negligent" (although not intentionally or willfully noncompliant) with respect to discovery in SSgt NW's court-martial; however, the circumstances were significantly different. In SSgt NW's case, the Government failed to disclose the expanded SFOI investigation *of SSgt NW himself*, as well as SSgt DB, for a suspected violation of Article 92, UCMJ, in a matter related to the Article 112a, UCMJ, prosecution. In contrast, so far as the record discloses, Appellant was not subjected to a reopened or expanded investigation after his original ROI was closed.

Therefore, to determine prejudice, we test for a reasonable probability of a different result. For reasons similar to those stated in our *Brady* analysis above, we do not find a different result reasonably probable. The record does not identify any expert who would testify DMHA could, under certain circumstances, produce a false positive for the cocaine metabolite. The record does not establish SSgt DB's pre-workout supplement actually contained DMHA in any quantity, much less a sufficient concentration to cause such a result. Even if we assume those unproven conditions are true, without any indication Appellant actually used the supplement we perceive no reasonable prospect of a different result.

Two additional considerations reinforce our conclusion. First, as trial defense counsel acknowledged, Appellant's defense team was provided with the SFOI ROI on SSgt NW. Thus the Defense was on notice of the presence of SSgt DB's supplement in the shared residence and SSgt NW's speculation that it could have caused a false positive result. However, despite being provided with an expert consultant in forensic toxicology, Appellant's defense team either did not consider this a theory worth pursuing or, having investigated it, determined it was not a defense worth presenting at trial. Second, and similarly, we note that in SSgt NW's trial, where SSgt NW had told SFOI directly he used the supplement, where the defense became aware of the purported MRO opinion before trial, and where the defense obtained a significant delay in the proceedings specifically to explore the potential of a "pre-workout defense," the defense evidently elected not to present such a theory at trial.

## III. CONCLUSION

The findings and sentence as entered are correct in law, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a), 66(d), and 69(e), UCMJ, 10 U.S.C. §§ 859(a), 866(d), 869(e).

Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court